ALBERT SCHEFFER and others, Executors, *vs.* NATIONAL LIFE
INSURANCE COMPANY OF THE UNITED STATES.

March 17, 1879.

**Removal to Federal Court.**—The act of congress incorporating the defendant, (15 St. at Large, 184,) and declaring it capable "of suing and being sued in the district and circuit courts of the United States, in law or in equity," does not vest in those courts exclusive jurisdiction of suits by or against the corporation, nor confer on the corporation a right of removal to the federal courts, when sued in the state courts. The right of removal in such cases is controlled by U. S. Rev. St. § 640.

**Life Insurance—Suicide—Insanity.**—In a life-insurance policy, a condition that the policy shall be void in case "of the insured dying by his own hand," does not extend to a case where the insured commits suicide while insane.

Evidence held sufficient to sustain a verdict.

Appeal by defendant from an order of the district court for
Ramsey county, *Wilkin,* J., presiding, refusing a new trial.

*Allis & Allis,* for appellant.

*Palmer & Bell,* for respondent.

GILFILLAN, C. J. When this cause was called for trial in
the court below, but before any other act was done toward a
trial, the defendant objected to the court proceeding further
in the cause, on the ground that it having executed and filed
the proper papers for a removal of the cause to the circuit
court of the United States, the state court had lost jurisdiction. If the record in the cause showed a loss of jurisdiction, it was error in the court to proceed further. No
order for removal was necessary. *St. Anthony Falls Water-
Power Co.* v. *King Bridge Co.,* 23 Minn. 186. The only ground
upon which the right of removal is claimed is that the defendant derives its corporate character under an act of congress
which declares that the corporation shall be capable "of suing
and being sued, pleading and being impleaded, in the district
and circuit courts of the United States, either in law or in
equity," in the district of Columbia, or elsewhere. It is

claimed that this provision, if it does not give to the courts of the United States exclusive jurisdiction in all actions to which the corporation is a party, at least gives to the corporation the privilege of electing to have its rights adjudged in the federal instead of the state courts. The act certainly gives to the corporation the character necessary to authorize jurisdiction in the federal courts, so far as that jurisdiction may depend on the character of litigants. But we do not think the act intended to authorize jurisdiction in the federal courts in all cases, without regard to the nature of, or amount involved in, the litigation. The interpretation which would lead to that result would also authorize all actions by or against the corporation to be brought in the district courts instead of the circuit courts of the United States; and that the act intended to enlarge the jurisdiction of the district courts, or of the circuit courts, so as to embrace, so far as affects this corporation, a class of actions of which those courts had not jurisdiction before, is hardly possible. The most that we can make of the provision is that the corporation may sue or be sued in the circuit or in the district court, in cases where such court may have jurisdiction of the subject-matter; and that the right of removal from a state to a federal court depends on the same consideration; that is, that no objection can be made to the right of removal so far as relates to the character of the corporation, provided the nature of the controversy is such as to authorize the removal.

Our attention is called to the act of March 3, 1875, (18 St. at Large, 470,) regulating removals. But that act does not include the case of a corporation created by or under the laws of the United States. Such cases are controlled by U. S. Rev. St. § 640, in which such a corporation is required to state, in its petition for removal, that it has a defence arising under or by virtue of the constitution of the United States, or any treaty or law of the United States. The petition in this case had no such statement, and it was therefore insufficient.

The action was upon a policy of life insurance upon the life

of Charles Scheffer.   It contained two conditions under which defence is made :   *First.*  That in case "of the insured dying by his own hand," the policy should be void.   *Second.*  That the statements and declarations made in the application for the policy were in all respects true, and without any suppression of any fact relating to the health, habits or circumstances of the insured, affecting the interests of the company.

Upon the defence under the first of these conditions, the evidence was complete that the insured died by suicide, and there was also evidence covering a period of several months prior to his death, commencing with a very serious injury suffered by him, tending to prove insanity.   We think there was enough of this evidence to justify a finding that he was insane at the time of the suicide.   The defendant claims that the jury were not at liberty to draw any inferences whatever relative to the mental condition of the insured, from the act of self-destruction itself.   The court below charged the jury that the mere fact of the commisson of suicide is not evidence of insanity.   Without expressing any opinion on the question whether suicide, where there is no other evidence showing the mental condition, is evidence of insanity, we think that where there is other evidence tending to show an insane condition, the fact of suicide may be considered in connection with that evidence.

The charge of the court below, upon the question whether death by suicide, committed by reason of insanity, avoids such a policy as that in suit, is very tersely and clearly expressed ; and as though the court feared the jury might misapprehend, it is several times repeated, always to the same effect, and in carefully chosen language.   The charge was that "if his (Scheffer's) reason was so far overthrown that he had not the power or capacity to exercise it upon the act he was about to commit ; if he did not understand, or if he did understand and appreciate the effect of the act, but was driven to it by an uncontrollable impulse caused by insanity, then it is

not to be considered as the act of his own hand, within the meaning of the policy."

This charge presented a point that has been repeatedly passed on by the supreme court of the United States, and the courts of last resort in many of the states, which courts have generally, with the exception of that in Massachusetts, given to such a condition in a life-insurance policy, the same construction given to it by the court below. *Knickerbocker Life Ins. Co.* v. *Peters*, 42 Md. 414; *Breasted* v. *Farmers' Loan & Trust Co.*, 4 Hill, 73; s. c. 8 N. Y. 299; *Phillips* v. *Louisiana Life Ins. Co.*, 26 La. An. 404; *Eastabrook* v. *Union Mutual Life Ins. Co.*, 54 Me. 224; *Phadenhauer* v. *Germania Life Ins. Co.*, 7 Heisk. 567; *Life Insurance Co.* v. *Terry*, 15 Wall. 580; *Insurance Co.* v. *Rodel*, 95 U. S. 232.

Construing the condition avoiding the policy in case of the insured dying by his own hand literally, it would include a death caused by his hand, even through accident or mistake, as in case of an accidental discharge of a fire-arm while held by him, or the taking, by mistake, of poison, under the belief that it was proper medicine. That the parties to such a policy intended the condition to include a death so caused, no court has ever intimated. Even the case of *Dean* v. *American Mutual Life Ins. Co.*, 4 Allen, 96, the strongest case cited in support of defendant's position, departs from a literal interpretation of such a condition, and lays it down that the condition is intended to protect the insurer against the destruction of life by the voluntary and intentional act of the assured. The weight of authorities and the best reason sustain the proposition, that to avoid such a policy, the mind and hand must concur in producing the death; that it must be a criminal act of self-destruction. The charge of the court below went no further than this, and was correct.

The alleged violation of the second of these conditions consisted in the representation, in the application for the policy, that a brother of the insured died by accident, when in truth he died by suicide. The fact that such brother died by

suicide, and consequently that the representation (if made)ᵥ was untrue, was shown beyond question. But it is claimed. that the application introduced, and in which the false representation is contained, was not sufficiently identified as the one upon which the policy issued, and the one to which it refers. The facts presented by the record are, that on November 23, 1868, the company issued a policy upon the life of Charles Scheffer, payable to Kate Scheffer, his wife. This policy was for $5,000, and was issued upon an application dated November 19, 1868, signed "Kate Scheffer, per Charles Scheffer," and "Charles Scheffer." In 1871, Kate Scheffer died, and on November 16, of that year, Charles Scheffer applied to the company by letter, stating the fact of his wife's death, and requesting the company to issue a new policy, payable to himself and his heirs. In compliance with this letter, the policy in suit was issued, for the same amount and of the same date as the former policy. It does not appear whether, aside from the date, amount and name of the payee, the two policies were or were not alike. That the company understood the last policy to be issued upon the application of Charles and Kate Scheffer, upon which the first policy issued, was proved clearly enough. If Charles Scheffer so understood it, then the defence was made out. There is nothing to show that he so understood it, except the reference in the policy to an application for it, and on the faith of which, as recited. in the policy, it issued. His letter of November 16, 1871, was. an application for that policy. It was competent for the parties to agree upon or treat the application of November 19, 1868, as the basis of the last policy, and as the application on which it issued. But we cannot say that the reference in. the policy to an application, on the faith of which it issued,. was to the application of Charles and Kate Scheffer, of November 19, 1868, rather than to the application of Charles. Scheffer by his letter of November 16, 1871. It was competent for the company to show that both parties understood the reference to be to the first of these applications, or to both.

But in the absence of any proof, other than the reference itself, that Scheffer so understood it, we cannot say that the jury were not justified in concluding that he understood the reference to be to the application by his letter of November 16, 1871.

And this is especially so, in view of the fact that the first policy was not introduced in evidence, and it does not appear that there was any condition in it making its validity depend on the truth of the representations in the application on which it issued. Had there been such a condition, the inference would be strong that the second policy was understood to depend upon the same condition. But there can be no such inference, where the conditions of the first policy are not known.

Order affirmed.

BERRY, J., *dissenting.* The letter of Charles Scheffer, which in the opinion of my brethren may properly be regarded as the "application" upon which the policy in suit was issued, is in these words:

"St. Paul, Nov. 16, 1871.

"E. W. Peet, Esq., Secretary, Philadelphia:

DEAR SIR: I return herewith policy No. 1,206 for $5,000. As my good wife died two weeks ago, you will please issue a new policy payable to myself and heirs. Send papers to First National Bank here, and I will pay the semi-annual premium due November 23.          Truly, etc.,

"Charles Scheffer."

I do not think that a letter of this kind is, in insurance parlance, an "application" for a policy. It does not seem to me reasonable to suppose that this can be the application to which the policy refers, when it says that the insurance is made "in consideration of the representations made in the application for the policy," nor the application referred to in that part of the policy which declares that the policy is issued and accepted upon the express condition and agree-

ment "that the statements and declarations made in the application for the policy, and on the faith of which it is issued, are in all respects true and without suppression of any fact relating to the health, habits or circumstances of the person insured, affecting the interests of said company."

Aside from this letter, there is no evidence of any application except that upon which the first policy was issued—the policy running to Kate Scheffer—in the place of which the policy in suit was issued. I think the evidence shows beyond a doubt that this was the only application ever made, and that it is the application referred to in the policy in suit. These views compel me to dissent from that part of the majority opinion which takes a contrary view. I think there should be a new trial.