90  177
105  287

## Christine Sabin v. The Senate of the National Union.

### Mutual benefit associations—Insurance—Suicide.

One who shows sufficient intelligence to employ a rope, adjust it, and commit suicide by hanging, cannot be said to be so unconscious of the natural physical result of his acts as to prevent the operation of a law of a benefit association, of which he is a member, prohibiting the payment of any benefit upon the death of a member who commits' suicide, whether sane or insane at the time of its commission; such a case being ruled by *Streeter v. Society*, 65 Mich. 199.

Error to Wayne. (Hosmer, J.) Submitted on briefs January 14, 1892. Decided February 5, 1892.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*A. C. Raymond* (*Brennan & Donnelly*, of counsel), for appellant.

*Sellers & Sellers*, for defendant.

Morse, C. J. On the 21st day of December, A. D. 1887,

Oren T. Sabin, plaintiff's intestate, became a member of Griswold Council, No. 15, National Union, located at Detroit, Mich. The deceased was one of the charter members of the council, and was present. on the night the council was organized and instituted, which occurred on the 16th day of November of the same year; but the certificate of insurance was not issued until the 21st day of December, A. D. 1887, from which date Sabin actually became a member. On the night that the council was instituted, the deceased. with the other charter members of the council, had their attention called to the constitution and laws governing the National Union, and especially to section 10 of law 5 of the constitution and laws, relative to sucides. The benefit certificate issued to Sabin was granted upon the express condition that all statements and representations made by Sabin in the application to procure membership in the council, and statements made to the medical examiner, were true, and that the same were made a part of the contract, and upon the further consideration that said Sabin strictly comply in the future with the laws, rules, and regulations controlling said benefit fund, or that should hereafter be enacted by the senate to govern said council and fund; and provided that—

"If these conditions are faithfully complied with, the Senate of the National Union hereby promises and agrees to pay out of its benefit fund to Christine Sabin, wife, two thousand dollars, pursuant to the provisions of the laws of this order governing said fund, upon sufficient proof," etc.

When Sabin became a member of the National Union, on the 21st day of December, 1887, section 10, law 5, was in force, and had been in force from August 1, 1885, and there had been no amendment thereto with reference

to suicides since that section of the law was enacted; which section reads as follows:

"No benefit shall be payable on account of the death of any member while engaged in mob, riot, or insurrection, or while violating the laws of the land, or by the hands of justice, or while in the military or naval service in time of war. Members of state militia organizations, when acting under orders, not to be included in this prohibition. And no benefit whatever shall be paid upon the death of a member who commits suicide within two years after becoming a beneficial member, *whether the member at the time of committing suicide be either sane or insane.*"

Sabin was a member of the board of trade in the city of Detroit, and an active business man, and continued in that business down to the day of his death, which occurred on Sunday, the last day of September, 1888. There is no question but that he took his own life by hanging himself in his barn on that day, and that he attended to his own business up to the time of his death. There was evidence tending to show that he was moody and despondent and was insane at and before the time of his death. The circuit judge directed a verdict for the defendant.

The plaintiff claims that this direction was erroneous, for two reasons:

1. That said section 10 of law 5 of the constitution and laws of the National Union was not a part of the contract between the insured and the insurer.

2. That if it was a part of the contract, and the insured was unconscious of the physical consequences of his act when committing suicide, the policy was not forfeited; and the question whether he was so unconscious should have been submitted to the jury.

We have no doubt but that the section referred to was a part of the agreement of insurance.

As to the second point, the court below was of the opinion that the case was ruled by *Streeter v. Society,* 65

Mich. 199. The circuit judge was undoubtedly correct in this opinion. Upon the question whether the person taking his life by his own hand was conscious of the natural result of the act which caused death, the facts of the Streeter case have a similar, if not the identical, bearing, as do the facts in the case before us. In that case Mower shot himself with a pistol, while here the plaintiff's intestate hung himself. There would be as much if not more deliberation in the act, and consciousness of the physical result, in this case as in the other. If, as was said in *Bigelow v. Insurance Co.*, 93 U. S. 284, "Bigelow [or Mower in the Streeter case] knew he was taking his own life, and showed sufficient intelligence to employ a loaded pistol to accomplish his purpose," then in this case Sabin knew he was taking his own life, and showed sufficient intelligence to employ a rope, and adjust it to hang himself, and accomplished his death, and had "capacity" enough to understand the physical nature and consequences of his act. In the Streeter case the fact that the suicide had capacity enough left to know the physical consequences of his act, although he did not appreciate its moral character, and was unconscious of the crime he was committing, was deduced entirely from the method employed in taking his life, as there was no other competent evidence tending to show whether or not he was conscious of the physical nature and consequences of his act. This case presents the same situation as to the testimony. There are no facts except the act itself that throw any light upon his condition as to his consciousness of the result that would follow such act. It must be considered that the Streeter case settles the law as to this case, and the judgment of the court below must be affirmed, with costs.

The other Justices concurred.