HARVEY A. BROWER, Respondent, v. SUPREME LODGE NATIONAL RESERVE ASSOCIATION, Appellant.

Kansas City Court of Appeals, April 4, 1898.

1. **Benefit Societies**: CERTIFICATE LIMITING ACTION: STATUTE. A provision of a life insurance certificate issued by a benefit society, requiring actions should be instituted within six months from the death of the insured member, is in conflict with section 2394, Revised Statutes 1889, and section 2832 in no wise affects the application of the former section.

2. ———: INSURANCE: SUICIDE: INSANITY: INSTRUCTION. A stipulation of an insurance certificate that the suicide of the insured whether sane or insane should cancel his certificate, means insane in any degree; and an instruction limiting the insanity to that kind which leaves the party capable of choice and voluntary action, is erroneous.

3. ———: ———: INSANITY: ACTION. Whether the death was the result of insanity or accident, the surrounding circumstances in this case make a question for the jury.

4. ———: CERTIFICATE OF INSURANCE: BY-LAWS. A certificate of insurance was issued subject to the existing by-laws of the society or changes thereafter made therein. Subsequent by-laws limited the assessments to the membership in the division where the deceased resided and changed the boundaries of such division and, therefore, the beneficiary was not entitled to any assessment over the membership in the original territory, and the change of by-laws in this case is *held* not to have removed the provision for separate assessments on separate jurisdictions.

5. ———: ———: EXCESSIVE VERDICT: INSTRUCTION. An instruction as to the amount of recovery in this case is *held* to be erroneous in not confining the assessment to the division in which the deceased held his certificate.

*Appeal from the Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

REVERSED AND REMANDED.

JAMES W. BOYD and BROWN, CHAPMAN & BROWN for appellant.

(1) This action was not instituted within six months after death, and the court erred in overruling defendant's demurrer to evidence of plaintiff, and in refusing defendant's instruction number 1. R. S. 1889, sec. 2823; Glass v. Walker, 66 Mo. 32; Bradley v. Ins. Co., 28 Mo. App. 7; Grigsby v. Ins. Co., 40 Mo. App. 276; Niblack on Ben. Soc. [2 Ed.], sec. 30, p. 615. (2) Plaintiff's instruction number 3 was erroneous with reference to the legal presumption and in requiring defendant to prove that suicide was the voluntary act of deceased. Haynie v. Indemnity Co., 41 S. W. Rep. (Mo.) 461; Scarth v. Life Soc., 75 Iowa, 346; Tritschler v. Ben. Ass'n, 180 Pa. St. 205; Bachmeyer v. Life Ass'n, 82 Wis. 255; Billings v. Ins. Co., 64 Vt. 78; DeGogorza v. Ins. Co., 65 N. Y. 232. (3) The court erred in rejecting defendant's testimony as to its northern and southern jurisdiction, and in refusing defendant's instruction number 2 and in granting plaintiff's instruction number 4, and in giving an instruction of its own motion. Defendant's amendments to its by-laws were valid. State ex rel. v. Grand Lodge A. O. U. W., 70 Mo. App. 456; 1 Bacon on Ben. Soc. [2 Ed.], sec. 91a and 92. (4) The verdict of the jury was excessive and unwarranted, and even if entitled to assessment on members of both northern and southern jurisdictions of defendant, plaintiff should not have recovered more than $1,042.66 with six per cent interest from August 12, 1896, to May 20, 1897. Frame

v. Sovereign Camp W. O. T. W., 67 Mo. App. 127;
Robyn v. Supreme Sitting Order I. H., 55 Mo. App.
198; O'Brien v. Home Ben. Soc., 117 N. Y. 310.

JOHNSON, RUSK & STRINGFELLOW for respondent.

(1) Appellant's first point, that the action was
not brought within six months, is not well taken.
R. S. 1889, sec. 2394. (2) Appellant's second point
is not well taken for the presumption is against sui-
cide and in favor of death being accidental. 3 Joyce
on Ins., sec. 2865; Meadows v. Ins. Co., 129 Mo. 76;
Mallory v. Ins. Co., 47 N. Y. 52; Lancaster v. Ins.
Co., 62 Mo. 121; Washburn v. Natl. Acc. Ass'n, 10
N. Y. Sup. 366; Star Acc. Co. v. Sibley, 57 Ill. 315,
citing R. R. v. Hines, 132 Ill. 161; Warner v. Acc.
Ass'n, 8 Utah, 431; Couadeau v. Am. Acc. Co., 95 Ky.
280; 4 Joyce on Ins., sec. 3773 and cases cited; Ins.
Co. v. Wistwell, 56 Kan. 765; Ingersoll v. Knights of
Golden Rule, 47 Fed. Rep. 272; Ins. Co. v. McConkey,
127 U. S. 661; Ins. Co. v. McWirter, 73 Fed. Rep.
444. The burden of proving this defense was on
defendant. See citations above also. 4 Joyce on Ins.,
sec. 3774 and cases cited. (3) When a sane man takes
his life by accident or mistake it is not suicide.
Bacon, Ben. Soc. and Life Ins. [1 Ed.], sec. 329;
Penfold v. Ins. Co., 85 N. Y. 317. (4) Appellant
introduced in evidence all the by-laws it had claimed
by it to relate to the question of the southern juris-
diction and no such division of the territory as con-
tended for by it was shown. If there had been a
by-law to the effect contended for by appellant, it
would have bound respondent if it had been reason-
able. But such a by-law would be unreasonable, and
unreasonable by-laws are not binding. 3 Am. and
Eng. Ency. Law [2 Ed.], 1062–1063, and cases cited.

(5) The presumption is that an assessment would have brought enough to pay the policy. Ben. Ass'n v. Swenson, 49 Kan. 449.

ELLISON, J.—This action is based on an insurance certificate issued to Norman J. Brower, plaintiff's son, by defendant, a benevolent association. The association and its certificates of insurance are governed by the statute relating to insurance on the assessment plan. Plaintiff recovered in the trial court the full amount of the certificate.

1. The deceased died in January, 1896, and more than six months thereafter this action was begun. There is a provision in the by-laws of the association, which were made a part of the contract, that no action accruing to a claimant under the certificate should be had or maintained unless begun within six months from the date of the death of the insured member.

BENEFIT societies: certificate limiting action: statute.

This provision of the by-laws is urged now as a reason in bar of plaintiff's action. Formerly, like provisions to this, when inserted in contracts, were upheld by the courts. But in 1887 the legislature enacted the following statute: "All parts of any contract or agreement hereafter made or entered into which either directly or indirectly limit or tend to limit the time in which any suit or action may be instituted, shall be null and void." R. S. 1889, sec. 2394. That statute covers the provision of the contract in this case and avoids it; leaving the action, in this respect, to be governed by the ordinary statute of limitations. Section 2823, Revised Statutes 1889, invoked by defendant, providing that benevolent societies of the class to which defendant belongs, may issue certificates "payable at such time and in such manner as shall be

therein, provided,'' in no wise affects the force or application of the statute quoted.

2. The following provision concerning suicide is found in the by-laws of the defendant and is pleaded as a defense to the action: ''Any member of this order holding a certificate in the death benefit department who shall commit suicide, whether sane or insane, during the first three years of his membership, or within three years from the date of his last reinstatement, shall by such act cancel his certificate and render it null and void and of no force or effect.''

———: insurance; suicide: insanity: instruction.

The court at the instance of plaintiff gave the following instruction over the objection of defendant: ''The jury are instructed that the law presumes the love of life to be so strong that no human being will voluntarily take his own life, and that when a person dies from violence such death is caused by accident and not by design, and it devolves upon the defendant to show by a preponderance of the evidence that the death of Norman J. Brower was the result of his own voluntary act done for the purpose of taking his own life.'' It will be noticed that the instruction devolves upon defendant the *onus* of showing to the satisfaction of the jury that the deceased's death was caused by his *voluntary* act. The word ''voluntary,'' as used in the instruction had reference to an exercise of the mind as to choice between life and death. It was just such an instruction as would have been proper if the provision against self-destruction had been, ''who shall commit suicide when sane, or, when not so far insane as to prevent a voluntary exercise of choice between life and death.'' It is not necessary to enter into a discussion of the medical views expressed by celebrated writers on the question of degrees of responsibility for acts which have resulted from insanity. But it may be

said that there are degrees of insanity. A person may be insane and yet know the character of the acts he commits, and have knowledge of what will result from such acts, and yet commit them voluntarily. He may have such knowledge and yet be so overcome by the insane impulse to commit the act as to wholly deprive it of voluntary character. That these are views entertained by courts is clearly to be inferred from the cases of Haynie v. Ins. Co., 139 Mo. 416; Adkins v. Ins. Co., 70 Mo. 27; Billings v. Ins. Co., 64 Vt. 78; Tritschler v. Ins. Co., 80 Pa. St. 205; DeGogorza v. Ins. Co., 65 N. Y. 232; Bigelow v. Ins. Co., 3 Otto, 284, and Ins. Co. v. Terry, 15 Wall. 580. The provision of the policy is that it will be avoided if the insured shall commit suicide though he be insane. , That is, insane in *any* degree. The instruction limits the degree of insanity to that kind‾ which leaves the party capable of choice and voluntary action. It was therefore erroneous.

In thus disposing of the instruction we have no criticism to make of the proposition it contains that the presumption is against self-destruction and that plaintiff should show the death to have resulted from the exonerating clause in the policy. In this connection plaintiff suggests that there was no evidence tending to show insanity. Though we pass by the fact that plaintiff's instruction itself recognized that insanity was one of the questions to be determined by the jury, we are not prepared to say there was no evidence of the deceased's insanity. It seems to us that the circumstances surrounding. his death, his condition prior thereto, the means used which resulted in death, and everything connected therewith, would leave a jury at liberty to find that it was accidental, or that it was the result of a sudden and uncontrollable impulse consequent upon

insanity, or that it was one of those unaccountable (so far as can be known) conditions of unsoundness of mind that led him to conclude to voluntarily take his own life. The actual cause of his act may be a matter of conjecture and of widely different opinions, as is often the case in such affairs, yet the mystery of motive or reason, or whether there be any motive or reason, must, under our system, when the question finds its way into the courts, be solved by a jury.

3. The further objection is made to the judgment in that the court refused to limit plaintiff's recovery to a sum which would have been realized if an assessment had been made of members in what is called the northern jurisdiction, defendant's membership being in that territory. In this connection it is said that the defendant, since issuing the certificate to deceased, has divided itself, by a new by-law, into a northern and southern division, representing, in a general way, the northern and southern parts of the United States. It was a part of the contract of insurance, and so stated in the certificate, that the insurance was subject to the by-laws then in force and to such changes as might thereafter be legally made in them. When this certficate was issued there was a by-law (number 39a) in force, providing that assessments for death claims could only be made on the members residing in the district or division where the deceased had his membership. It reads as follows:

"Law 39a. Members holding their membership in any state when so created as a separate jurisdiction, shall only be liable for deaths occurring in such jurisdiction and the membership outside such state jurisdiction shall not be liable for deaths occurring in any separate state jurisdiction. The death benefit fund derived from and paid by members in any state juris-

diction, shall not be used for the payment of claims occurring outside of such jurisdiction, neither shall such death benefit fund paid by members outside of any separate state jurisdiction be used in the payment of claims occurring in such state jurisdiction. Provided that should thirty-two (32) assessments levied upon the membership in any such separate state jurisdiction during any calendar year be not sufficient to pay the claims occurring in such jurisdiction then the reserve fund of the entire order may be drawn upon for the excess. Separate accounts shall be kept of all moneys received and paid out in the several jurisdictions.''

But we do not discover in the record, save by the verbal statement of a witness, that there was in fact any division of territory made at the time the certificate was issued. Afterward, however, and before deceased's death, there was a division of territory established by the adoption of a new set of by-laws. The provision referred to is as follows:

''Law 2a.—NORTHERN JURISDICTION—WHAT COMPOSED OF.—The Northern Jurisdiction Supreme Lodge National Reserve Association, shall be composed of the following states and territories, to wit: Virginia, Kentucky, Missouri, Kansas, New Mexico, Arizona, California and all territory in the United States lying north of the same. No person residing in any of the above named territory shall be allowed to make application for membership in this order, unless made to some lodge located within said territory. Any violation of this law shall effect the cancellation without notice of any certificate that may be issued to such applicant and a forfeiture of all moneys paid by him.''

We, therefore, take the situation to be this: that at the time of issuing the certificate there was no division

of territory, but a provision contemplating such division and providing for separate assessments for deaths of members of the division assessed. We can only conclude that it was contemplated that such division would, or might be made, and that when made its provisions would be just as effective as though it had been in force when the certificate was issued. The deceased made that by-law a part of his contract. The face of the by-law itself shows that division of jurisdiction was contemplated. It reads: "Members holding their membership in any state *when so created* as a separate jurisdiction shall only be liable," etc. Not only so, but, as has been stated, he agreed to abide by any legal and reasonable change or amendment of the by-laws which might afterward be made. It is therefore scarcely possible to resist the conclusion that the contract of insurance, as governed by the by-laws, only contemplates an assessment, for the death claim in controversy, on the members of that division or jurisdiction in which the deceased had his membership.

It is argued by plaintiff that the amended by-laws, in which is found the section establishing separate jurisdictions, is a complete set of laws and that the section first above quoted providing for separate assessments, was dropped and was therefore not a by-law at the time of deceased's death. That by contracting to abide by the by-laws as they existed or as they might be changed, the change would apply to the certificate and as by the change there was no provision left for separate assessments on the separate jurisdictions, such separate assessments could not be had. We do not think this argument is sound. For, as we have already said, the original contract of insurance, as shown by the by-law first quoted, was that the death claims should be collected from the jurisdiction in

which the membership was, a jurisdiction to be thereafter created. And there is no sound reason for supposing that the defendant by repealing the law intended to change contracts which did not *depend on the continuance* of such law, but only depended on the creation of the separate jurisdictions contemplated when the contract was made.

4. It remains to consider the question made as to an excessive verdict, it being for the full face of the certificate and interest. It is provided in the by-laws of defendant that the amount of a claim under a certificate of insurance should not exceed seventy-five per cent of an assessment made on the claim (the remaining twenty-five per cent to be a reserve fund) and that if a seventy-five per cent assessment did not make the face of the certificate, the amount that it did realize was all that could be demanded or collected on the certificate. The court gave instructions in recognition of that by-law, but refused to confine the operation of the assessment to members of the northern jurisdiction. This, as we have seen, was error. It is conceded by defendant that the obligation devolves upon it to show that a seventy-five per cent assessment would not make the face of the certificate. This should be done in an intelligible and clear way, so that it may be understood, as well as may be, and not left to be a matter of conjecture. And to this end we may remark, since some complaint is made on the subject, it should bring forward the proper records and papers for examination in court when requested by the opposite party.

The judgment will be reversed and cause remanded. All concur.