# JULY TERM, 1899.

### PRESENT:

Hon. FRANK DOSTER, Chief Justice.
Hon. WILLIAM A. JOHNSTON, } Associate Justices.
Hon. WILLIAM R. SMITH,

---

Ruth America Hart v. The Modern Woodmen of America.

#### No. 11155.

Ruth America Hart, *as Guardian of Everett L. Hart,* v. The Knights of the Maccabees.

#### No. 11156.

Life Insurance— *Suicide Clause not Invalid.* It is competent for parties in contracting as to life insurance to provide that self-destruction by the insured, whether sane or insane, shall avoid the contract. Such a provision covers a case of intentional self-destruction by one who understood the physical nature and consequences of the act which caused his death, although his mind was so far impaired that he was not conscious of the moral quality or consequences of such act.

Errors from Sedgwick district court; D. M. Dale, judge.    Opinion filed July 8, 1899.    Affirmed.

*Amidon & Conly,* for plaintiffs in error.

*Bentley & Hatfield,* for defendants in error.

The opinion of the court was delivered by

Johnston, J. : On June 1, 1896, Ozro E. Hart applied for membership and insurance in the Modern Woodmen of America, and on June 5, 1896, a beneficiary certificate was issued to him, providing that

Hart v. Modern Woodmen.

while in good standing he was entitled to participate in the benefit fund in the amount not to exceed $3000, which was to be paid at his death to his mother, Ruth America Hart. On June 13, 1896, Ozro E. Hart also obtained a beneficiary certificate in the order of the Knights of the Maccabees in the sum of $3000, payable at his death to Everett L. Hart, his son. In the case of the Modern Woodmen of America, it was expressly provided that the certificate should be void and all benefits which might have accrued absolutely forfeited if the insured should die "by his own hands, whether sane or insane." In the application Hart was asked if he understood that the order did not indemnify against death by suicide, to which he made an affirmative answer, and it was provided that the statement should constitute a part of the insurance contract.

In the case of the Knights of the Maccabees, the certificate provides that when the applicant becomes a member of the order he is entitled to the rights and benefits of the same subject to the provisions of the laws of the order. The laws of the order expressly provide that no benefits shall be paid on account of the death of a member when death is "the result of suicide within one year after admission, whether the member so taking his own life was sane or insane at the time." On the certificate itself is printed this provision of the law, exempting the order from liability if the member commit suicide within one year after admission to the order, whether sane or insane. The application of Hart also contains this declaration : "I also agree that should I commit suicide within one year from the date of my admission into the order, whether sane or insane at the time, this contract shall be null and void." And he further stipulated that

the application and laws of the order should constitute a part of the certificate.

Within a few days after his admission into the orders and the taking out of the beneficiary certificates, Ozro E. Hart committed suicide, and the facts with reference to the suicide were agreed on between the parties and are as follows :

" The said Ozro E. Hart was married on the 4th day of July, 1889, and lived and cohabited with his wife until the time of his death, and that his wife was the mother of said Everett L. Hart and he the father of said child ; that on the night of the 19th or 20th day of June, 1896, the said Ozro E. Hart first learned and discovered that his wife and one Pitt were occupying the same bed and illicitly cohabiting together, and that his said wife was guilty of adultery with the said Pitt, and that the said knowledge and information of the infidelity of his wife affected the mind of said Hart to such an extent and in such a manner that his reasoning faculties became so impaired that he, the said Ozro E. Hart, became unable to understand the moral character of his acts and became insane, and while in such condition of mind, and while being so insane, he shot and killed his said wife, then turned the pistol on himself, and shot and killed himself, in the city of Wichita, Sedgwick county, Kansas, on June 21, 1896."

In the trial the principal controversy was whether the self-destruction of Hart exempted the orders from liability, and the decision in each case was in favor of the defendant. While there is some contention to the contrary, it is clear that an exception as to non-liability because of death by suicide, whether sane or insane, is a part of each of the insurance contracts under consideration. In one case it is plainly written on the face of the certificate, and in the other it is clearly provided for in the application and by-laws, which are referred to and made a part of the certifi-

cate, which together show the contract of the parties and that the exception is included.

Much diversity of judicial opinion has arisen as to the effect of the suicide of the insured.   The supreme court of the United States has distinctly held that intentional self-destruction by the insured while sane is not a risk covered by a life-insurance policy, even when the policy contains no exception as to such a death, and it was there said that such a risk could not be legally covered by an insurance contract, as it would be against public policy to make such a contract.   (*Ritter v. Mutual Life Ins. Co.*, 169 U. S. 139, 18 Sup. Ct. 300 ; *Supreme Commandery Knights Golden Rule v. Ainsworth*, 71 Ala. 436 ; *Hartman v. Keystone Ins. Co.*, 21 Pa. 466.)   Other authorities hold that where life insurance is effected for the benefit of wife or children the suicide of the insured while sane is not a defense, in the absence of a condition or exception to that effect in the policy.   (*Fitch v. American Popular Life Ins. Co.*, 59 N. Y. 557 ; *Darrow v. Family Fund Society*, 116 N. Y. 537, 22 N. E. 1093 ; *Mills v. Rebstock*, 29 Minn. 380, 13 N. W. 162.)   The supreme court of Wisconsin has held that intentional suicide while sane does not avoid a life-insurance policy in the absence of any provision therein to that effect, if third persons are beneficiaries.   (*Patterson and others v. Natural Premium Mutual Life Ins. Co.*, 100 Wis. 118, 75 N. W. 980.)   There is much conflict in the authorities where the insurance contract merely excepts death by suicide or self-inflicted injuries — the result of varying standards in measuring the mental capacity and responsibility of the insured.   With respect to this provision, Justice Gray, of the supreme court of the United States, remarked :

"The decisions upon the effect of a policy of life

insurance which provides that it shall be void if the assured 'shall die by suicide' or 'shall die by his own hand' go far toward determining this ·question. This court, upon full consideration of the conflicting authorities upon that subject, has repeatedly and uniformly held that such a provision, not containing the words 'sane or insane,' does not include a self-killing by an insane person, whether his unsoundness of mind is such as to prevent him from understanding the physical nature and consequences of his act, or only such as to prevent him, while foreseeing and premeditating its physical consequences, from understanding its moral nature and aspect." (*Accident Ins. Co. v. Crandal*, 120 U. S. 527, 7 Sup. Ct. 685.)

To avoid disputes as to the meaning of "suicide" and definitely to fix the extent of the risk, it is not uncommon to incorporate a condition in an insurance contract that it shall be void if the insured die by suicide, sane or insane. No reason is seen why a stipulation exempting the insurer from liability for acts of the insured committed while insane should not be enforced. It does not contravene sound morals or public policy,. and courts must enforce the intention of the parties as expressed by it. As to the right of insurance companies to include such an exemption in the policy, it has been said that if " they are at liberty to stipulate against hazardous occupations, unhealthy climates, or death by the hands of the law, or in consequence of injuries received when intoxicated, surely it is competent for them to stipulate against intentional self-destruction, whether it be the voluntary act of an accountable moral agent or not."

As to the effect of the words "sane or insane," added to the condition, the same authority said :

"Nothing can be clearer than that the words 'sane or insane' were introduced for the purpose of excepting from the operation of the policy any intended

self-destruction, whether the insured was of sound mind or in a state of insanity.  These words have a precise, definite, well-understood meaning.  No one can be misled by them, nor could an expansion of this language more clearly express the intention of the parties.  In the popular, as well as the legal sense, 'suicide' means, as we have seen, the death of a party by his own voluntary act; and this condition, based as it is on the construction of this language, informed the holder of the policy that if he purposely destroyed his own life the company would be relieved from liability." (*Bigelow v. Berkshire Life Ins. Co.*, 93 U. S. 294.)

Such a condition does not admit of an interpretation to include death by accident or by mistake, although it may have resulted from the immediate act of the assured, but under an exception such as we are considering, if the insured purposely takes his own life the insurer goes free. (*Pierce v. Travelers' Life Ins. Co.*, 34 Wis. 389; *De Gogorza v. Knickerbocker Life Ins. Co.*, 65 N. Y. 241; *Scarth v. The Security Mutual Life Society*, 75 Iowa, 346, 39 N. W. 658; *Sarah E. Billings v. Accidental Ins. Co. of North America*, 64 Vt. 78, 24 Atl. 656; *Streeter v. Insurance Society*, 65 Mich. 199, 31 N. W. 779; *Salentine v. Mutual Benefit Life Ins. Co.*, 24 Fed. 161; *Union Central Life Ins. Co. v. Hollowell*, 14 Ind. App. 611, 43 N. E. 278; *Riley v. Hartford Life and Annuity Co.*, 25 Fed. 316; *Travelers' Ins. Co. v. McConkey*, 127 U. S. 661, 8 Sup. Ct. 1360; *Sabin v. National Union*, 90 Mich. 177, 51 N. W. 202.)

In interpreting such an exception, a distinction has been made by some of the authorities between cases of insanity where the suicide was conscious of the physical nature and result of the act which causes his death, and cases where he did not appreciate the physical consequences of such act.  If there be ground for such a distinction there is no room for it in the cases under consideration.  The agreed facts show a

case of intentional self-destruction, and that, while he did not understand the moral character of his acts, he had sufficient intelligence as to what the physical end and consequences of the same would be. We are not required to determine the effect of such an exception where the insured was so wholly bereft of reason that he did not understand the natural result of his acts, nor what would be the effect if, in addition to this exception, the contract contained a clause making it incontestable after a stated time and the death had occurred after that time. From the language of the contracts and the agreed facts as to the manner of Hart's death, it is clear that the risk was not within the contemplation of the contracting parties. The judgments of the district court will therefore be affirmed.

DOSTER, C. J., concurring.
SMITH, J., not sitting.