GEORGE B. SCHERAR v. PRUDENTIAL INSURANCE COMPANY OF AMERICA.

FILED JANUARY 8, 1902.   No. 10,413.

Commissioner's opinion, Department No. 1.

1. **Answer: AMENDMENT: DISCRETION: ABUSE: PREJUDICE.** It is within the discretion of the trial court to permit a defendant to amend his answer, and error can not be predicated upon it, unless an abuse of discretion is shown, and prejudice resulting therefrom.

2. **Insurance: POLICY: CONDITION.** A condition in a life insurance policy that if, within three years from the date of the policy, the insured should die by suicide, sane or insane, the liability of the company should be limited to the amount of the premiums paid, is valid, and it is no answer to such a stipulation

that the insured was insane, and unconscious of the moral and physical consequences of the act which caused death.

3. **Evidence:** FORFEITURE: WAIVER. Evidence examined, and *held* not to constitute a waiver of forfeiture in the policy.

ERROR from the district court for Douglas county. Tried below before DICKINSON, J.   *Affirmed.*

*Greene & Breckenridge,* for plaintiff in error.

*Hiram A. Sturges* and *A. N. Ferguson,* contra.

DAY, C.

This action was brought by George B. Scherar, a minor, by John G. Hetter, his next friend, in the district court of Douglas county, to recover upon a policy of insurance for the sum of $1,000, issued by the Prudential Insurance Company upon the life of Rose H. Scherar, payable, in the event of death of the insured, to the plaintiff. Upon the trial the court directed the jury to return a verdict in favor of the plaintiff for the amount of the premiums paid. In obedience to this instruction a verdict was returned for the plaintiff for $63.36, upon which judgment was rendered, to review which the plaintiff brings the case to this court on error.

The defendant admitted the execution of the policy on October 10, 1894, and the death of the insured on or about April 13, 1896. By way of defense it pleaded a provision of the policy that if, within three years from the date of the policy, the insured should die by suicide, whether sane or insane, the liability of the company should not exceed the amount of the premiums paid on the policy. It was also alleged that the insured came to her death by strangulation, caused by her own act while insane. The defense was also pleaded that the policy contained a stipulation that, if the premiums were not paid when due, the policy should be void; that the insured had failed to pay the premium becoming due April 10, 1896, and by reason of such non-payment of premium the policy became null and void. The

plaintiff admitted the condition of the policy that if the insured should die by suicide, whether sane or insane, the liability of the company should not exceed the amount of the premiums paid, and admitted that the insured at the time of her death was insane, and that her death was caused by strangulation, but sought to avoid the terms of the contract by an allegation that the insured was in such an insane condition that she was unconscious of the act which caused her death, and wholly unable to determine the physical result of her act. The reply further alleged that the defendant had waived the conditions of its policy, which relieved it from liability in the event of death by suicide, whether sane or insane, by canceling the policy for non-payment of premium, and not because the insured committed suicide. The reply further alleged that the prompt payment of the premium had been waived, and that the policy was not in fact canceled till May 1, 1896. Immediately prior to the submission of the case to the jury the defendant withdrew its defense of the non-payment of the premiums when due, and consented that the court might instruct the jury to find for the plaintiff to the extent of the premiums which had been paid. It is contended by the plaintiff that the defendant should not have been permitted to amend its answer upon the eve of trial. The answer filed alleged that the insured came to her death by strangulation, voluntarily caused by her own act. The amended answer alleged that "the insured came to her death by strangulation caused by her own act while in an insane condition of mind." The right to amend a pleading at any time during the pendency of the action, and even after judgment, rests largely within the discretion of the trial court, and no error can be predicated upon the allowance of an amendment, unless an abuse of discretion is shown to the prejudice of the complaining party. In this case there is no pretense that the amendment was prejudicial to the rights of the plaintiff; in fact the reply admitted the new matter alleged in the amended answer to the effect that the insured came to her death by suicide while insane. This

rule has been so many times announced by this court that the citation of authorities in support of it seems unnecessary. Code of Civil Procedure, sec. 144; *Dunn v. Bozarth,* 59 Nebr., 244; *Central City Bank v. Rice,* 44 Nebr., 594, 598.

The important question presented by the record, is the construction to be given to the clause avoiding the policy if the insured should die by suicide, sane or insane. It is the duty of the court to ascertain from the contract, if possible, what the parties meant by it, and, when so ascertained, to give effect to it. The intention of the parties in incorporating into the contract the proviso that it should be void if, within three years from date thereof, the insured should die by suicide, sane or insane, seems to us so manifest that an explanation of its meaning seems hardly necessary. The language employed is plain, simple and concise, and, when given its common and ordinary meaning, is not likely to be misunderstood. Under the terms of this policy it was clearly the intention of the parties to protect the insurer from liability, except to the amount of the premiums paid, for any self-destruction by the insured, no matter what the mental condition of the insured might be at the time the act was committed. It was entirely immaterial whether the insured was mildly or violently insane, or whether her malady was of such a character that she was unconscious of the moral and physical nature of the act. No kind or degree of insanity will prevent an avoidance under such a contract where the assured commits the act of self-destruction. There is no reason why the insurer may not by stipulation contract that the liability shall not extend to acts of self-destruction committed while the insured is sane or while he is insane, the same as the insurer may contract that the liability shall not extend to hazardous occupations, residence within the tropics, death in a duel, or the like. The insurer evidently was unwilling to incur the perils of insanity, and the clause exempting it from liability was inserted to protect it against that hazard. It is well settled by a long line of decisions in this country that

under the old forms of life insurance policies in which it is provided that the insurer should not be liable if the insured committed "suicide" or "died by his own hand," the policy was not avoided when the insured committed suicide while insane, the basis of the reasoning being that it was not within the contemplation of the parties that the policy should be avoided if the insured was insane at the time of the suicide. A few of the many cases readily found are cited. *Life Ass'n of America v. Waller*, 57 Ga., 533; *Hathaway v. National Life Ins. Co.*, 48 Vt., 335; *Newton v. Mutual Benefit Life Ins. Co.*, 76 N. Y., 426; *Scheffer v. National Life Ins. Co.*, 25 Minn., 534; *Life Ins. Co. v. Terry*, 15 Wall. [U. S.], 580; *American Life Ins. Co. v. Isett*, 74 Pa. St., 176; *Hancock Mutual Life Ins. Co. v. Moore*, 34 Mich., 41; *Estabrook v. Union Mutual Life Ins. Co.*, 54 Me., 224. In view of the decisions of the courts, and apparently to meet the effect of them, companies began to insert in their policies such words as are used in this policy, or words equivalent thereto, as "suicide, sane or insane," "die by his own hand, sane or insane," and other like expressions. There are a few cases to be found in which language is employed which would seem to imply that, if the insured was at the time of the suicide in such an insane condition as to be unconscious of the moral and physical nature of the act, the insurer would not be relieved under a clause avoiding the policy for suicide, sane or insane. *Pierce v. Travelers' Life Ins. Co.*, 34 Wis., 389; *Mutual Benefit Life Ins. Co. v. Daviess*, 87 Ky., 541, 9 S. W. Rep., 812, and a few others. In our opinion, however, the great weight of authority, as well as a fair interpretation of such contracts, is the other way. In *De Gogorza v. Knickerbocker Life Ins. Co.*, 65 N. Y., 232, it was held: "A condition in a policy of life insurance declaring it void in case of the death of the insured by his own hand or act, sane or insane, is valid; and if the insured commits suicide, although at the time utterly bereft of reason, it is a death by his own hand or act within the meaning of the condition, and the policy is forfeited." In the case

of *Scarth v. Security Mutual Life Society*, 75 Ia., 346, 39 N. W. Rep., 658, the petition alleged that the insured came to his death by shooting himself in the head; that said act of suicide was committed while assured was temporarily insane; that the insanity was the result of sickness and lowness of spirits; and that in doing the act assured was entirely unable to control himself, and that his act was occasioned by such insanity, about and over which the assured was in no manner conscious or responsible. A demurrer was interposed, based upon a provision of the policy rendering it void "if the member shall commit suicide, feloniously or otherwise, sane or insane." The demurrer was sustained. In the course of the opinion the court, after citing authorities, says: "In some of these cases language is employed which would seem to indicate that, if the insured was not at the time conscious of the physical nature and consequences of the act, the policy might not be void. We think, however, that the better rule, and the logical conclusion of all the above cited cases, is that the condition in the policy was intended to include self-destruction, no matter what the mental condition of the insured was at the time of the act which caused the death. Of course, the policy never was intended to include death by accident, as by taking poison by mistake, the accidental discharge of a gun or pistol held in the hands of the insured, or the like. It means all suicidal acts, whether such as are denominated as criminal or such as are the offspring of insanity." In *Bigelow v. Berkshire Life Ins. Co.*, 93 U. S., 284,—a leading case in which the authorities are reviewed,—it is held that a stipulation in a life insurance policy that it shall be void if the insured shall die by suicide, sane or insane, is valid; and it is no answer to such a stipulation that the insured was of unsound mind and wholly unconscious of the act. In *Billings v. Accident Ins. Co.*, 64 Vt., 78, 17 L. R. A., 89, it is held that "No degree of insanity on the part of one who intentionally takes his own life will be sufficient to take the case out of a stipulation in a policy of insurance upon his life relieving the insurer from liability if death

results from suicide, sane or insane." In *Spruill v. North-western Mutual Life Ins. Co.*, 120 N. Car., 141, 27 S. E. Rep., 39, it was stipulated that if the insured, whether sane or insane, die by his own hand, the policy should be void. In passing on this question the court said that it was immaterial what the mental condition of insured was at the time of his death, that the insurer's liability was not affected by the degree of his insanity and that the words "die by his own hand" are equivalent to ·"suicide." In *Tritschler v. Keystone Mutual Benefit Ass'n*, 180 Pa., 205, 36 Atl. Rep., 734, the policy provided that in case the person whose life is insured shall die by suicide, feloniously or otherwise, sane or insane, the policy should be null and void. The plaintiff averred that the assured came to his death by shooting himself while insane, and while, by reason of such insanity, he was not responsible for his acts and conduct, and that he was unconscious of the moral and physical consequences of his act at the time of shooting himself. A demurrer was interposed upon the ground that the statement showed that assured had violated the essential provision of his contract. The court sustained the demurrer, and said: "Where there is such a stipulation [relating to suicide, sane or insane] the authorities are almost uniformly to the effect that such provision is binding, even if the act of self-destruction was the result of insanity." The same construction is placed upon similar contracts in the following cases: *Blackstone v. Standard Life & Accident Ins. Co.*, 74 Mich., 592, 611; *Sargeant v. National Life Ins. Co.*, 189 Pa., 341; *Parish v. Mutual Benefit Life Ins. Co.*, 19 Tex. Civ. App., 457, 459; *Hart v. Modern Woodmen*, 60 Kan., 678, 57 Pac. Rep., 936; *Sabin v. Senate of the National Union*, 90 Mich., 177, 51 N. W. Rep., 202; *Northwestern Mutual Life Ins. Co. v. Maguire*, 19 Ohio C. C., 502; *Brower v. Supreme Lodge National Reserve Ass'n*, 74 Mo. App., 490.

It is insisted by counsel for plaintiff that the defendant company, by its acts, waived its right to set up as a defense to the policy that the insured had committed suicide. The

basis of this contention is that after the death of the insured, and with full knowledge of the facts in relation thereto, the defendant, it is claimed, denied liability on the ground that the premium had not been paid when due, and the policy canceled. The record shows that after the death of the insured the attorneys for the plaintiff wrote a letter to the defendant, inclosing therewith a draft for $9.39, in payment of the quarter annual premium due April 10, 1896. This draft was returned to the attorneys in a letter as follows, omitting formal parts: "We have your favor of the 19th inst., inclosing $9.40, which you state is the quarterly premium on policy No. 26,456. We find this policy has been canceled for non-payment of premium, and refer you to our general agent, Mr. C. R. Gates, whose address is Frenzer Block, Omaha. If you will call upon him relative to the matter every facility will be afforded you for the revival of the policy. We return you, herewith, the remittance which accompanied your favor of the above date." This was the only evidence in support of the plaintiff's contention that there was a waiver of the suicide-clause in the policy. In our opinion, this evidence is not sufficient to sustain such a claim. There was no denial of liability on the part of the company, and in fact no occasion had arisen for such denial, as no demand for payment had been made. The question of the liability of the defendant was not in any manner raised or referred to in the correspondence, and certainly until a claim of some kind is made upon the company for payment, it can not be said that it is called upon to admit or deny liability. The position of the plaintiff is simply this: He requested the company to accept payment of a past-due premium, and, because the company informed plaintiff that the policy had been canceled, and referred him to its local agent as to its revival, he now insists, after suit is brought, that the company should be limited in its defense to the question of the payment of the premiums, and whether the cancelation had been properly made. If demand had been made upon the company for

payment of the policy, and the company had denied liability for the reason that the policy had been canceled for nonpayment of premiums, and placed its claim for non-liability solely on that ground, it could not, after suit brought, be heard to urge other or different grounds of defense. We recognize fully the rule contended for by plaintiff that, where a party gives a reason for his decision and conduct touching anything involved in the controversy, he is estopped, after litigation has begun, from changing his ground and putting his conduct on another and different consideration. *Ballou v. Sherwood*, 32 Nebr., 666, 668; *Continental Ins. Co. v. Waugh*, 60 Nebr., 348; *Ohio & M. R. Co. v. McCarthy*, 96 U. S., 258. In our opinion, the facts of this case do not bring it within the above rule. It is easy to conceive of many instances where death is the result of the act of a party which nevertheless come clearly within the category of accidents. Thus, if one should drink a poisonous draught, thinking it to be an innocent beverage, or kill himself with a loaded pistol, which he thought was unloaded, such acts would in the judgment of all men be regarded as purely accidental, and would not avoid a policy containing provisions similar to the one under consideration; but in this case the facts are such as to preclude the belief that the death was accidental. The insured had placed a rope around her neck, tied the other end of the rope over a water tank in her kitchen in such a manner that by jumping off a shelf near by her body was suspended, resulting in death by strangulation. Upon a careful examination of the record, we discover no error to the prejudice of the plaintiff, and therefore recommend that the judgment of the district court be affirmed.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.