HARRIET H. RAWLINS ET AL., APPELLEES, V. WILLIAM MYERS ET AL., APPELLANTS.

FILED SEPTEMBER 26, 1914. No. 17,749.

1. **Pleading: AMENDMENT.** It is within the discretion of the trial court to permit an amendment of the petition or answer, and error cannot be predicated upon such permission unless an abuse of discretion is shown and prejudice results therefrom. *Brown v. Rogers & Bro.,* 20 Neb. 547; *McKeighan v. Hopkins,* 19 Neb. 33.

2. **Vendor and Purchaser: RESCISSION: MISREPRESENTATIONS.** Fraud or misrepresentation as to the quality or condition of the premises contracted for is ground for rescission, provided the statement is material, and is not the mere expression of an opinion, and is made under such circumstances as entitles the purchaser to rely on such statement. 39 Cyc. 1269, and cases cited.

3. ———: ———: ———. Where the vendor of land makes a false representation as to the character of the land, its location, and its value, under circumstances justifying the vendee in relying thereon, such misrepresentation is ground for a rescission of the contract. In such case the supreme court will not ordinarily disturb a verdict based upon a conflict of evidence. *Ross v. Sumner,* 57 Neb. 588.

4. **Instructions.** An examination of the instructions fails to disclose prejudicial error as against the defendants, and the judgment is supported by the evidence.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*Herman G. Boesche,* for appellants.

*John M. Macfarland* and *A. J. Kinnersley, contra.*

HAMER, J.

The plaintiffs, Harriet H. Rawlins and Rodney A. Raw-lins, traded a drug store which they owned at Sioux City, Iowa, to defendants for an equity in a tract of land in Atchison county, Missouri. There was a mortgage on the drug store for $700. There were two mortgages on the Atchison county land. The first was for $4,500 and the second for $1,500, upon the latter of which $500 had been paid. The plaintiffs claim that the plaintiff Harriet H. Rawlins went to the Omaha office of defendants and pro-ceeded with them to Missouri to examine a farm there known as the Dierks farm. The Dierks farm is claimed by defendants to adjoin the Austin farm, the Atchison county land for which the plaintiffs traded. The plain-tiff Harriet H. Rawlins testified that she never examined the Austin farm, the particular farm in controversy, and that she did not think of examining the same and procur-ing title to it until after she returned from Missouri to Omaha; that she found she could not make a deal for the Dierks farm, and that the defendants drew a contract agreeing to trade her the Austin farm for the plaintiffs' stock of goods; that defendants were to examine the stock of goods; that the defendants went to Sioux City and ex-amined the stock of goods before the trade was made; that the plaintiffs lived in Sioux City, Iowa, a long dis-tance from the land in controversy, and that they knew nothing of it except what was represented to them by the defendants. The defendants represented to plaintiffs that, in addition to the land deeded to them, they would get 40 acres of land by reason of an accretion to the tract conveyed in Atchison county; that they further repre-sented that the buildings on the land were in first-class condition; that there were 36 acres in winter wheat on the land, and that there was fine building timber on the land; that the defendants represented the valuation of

their land to be $10,000, and that it would be easy to obtain a loan to take care of the mortgage on the land, and that they (the defendants) would take care of the small mortgage on the land if the plaintiffs were unable to do so; that the plaintiffs relied on these representations, and believed them to be true, and were induced thereby to make the exchange of property; that the above representations were untrue, and the defendants knew they were untrue; that there were not 40 acres of accretion land; that there were not 36 acres of winter wheat on the land; that there was no building timber on the land, and that the whole of the second mortgage of $1,000 was due March 1, 1910; that when the defendants made the promise to take care of this mortgage they did not intend to do so; that, in fact, there was no equity in the land.

It appears that when the trade was made the plaintiffs made a bill of sale, which was delivered to defendants. They also delivered to defendants a note and mortgage for $3,700; that the plaintiffs also gave additional security upon their land in Louisiana; that the defendants immediately moved the stock of goods from Sioux City to Council Bluffs, and disposed of the same and paid the $700 loan and received for said stock $2,800; that the plaintiffs went to Missouri in March, 1910, and examined the land, and discovered the fraud, and offered to trade back. They were willing to pay back the $700, but the defendants refused to return them the stock of goods or its value, and refused to return the $3,700 note which the plaintiffs had given them.

The plaintiffs further claim that the land in Missouri was foreclosed; that under the laws of Missouri the land was sold and bought in by the defendants; that the defendants wholly refused and neglected to assist the plaintiffs in taking care of the securities which came due when the plaintiffs had no money and when they had relied upon the assistance of defendants; that the defendants by their fraud obtained the appellees drug store of the value of $2,800 and obtained a mortgage of $3,700 upon the land of

plaintiffs in Louisiana, and also got back the land in Missouri.

The plaintiffs appear to have filed their petition in the district court for Douglas county asking for $6,500 damages, being the amount of their drug stock and interest, and the amount of the note which they alleged was obtained of them by the fraud of defendants.

It appears that the plaintiffs asked leave to amend their petition by interlineation. The plaintiffs were allowed to amend their petition in paragraph 3½ by interlineation changing the words "allow credit for" to "pay back." Thereafter the court made an order vacating a previous order and permitting plaintiffs to amend their petition by attaching an amendment thereto, which was accordingly done. The amendment finally made to the petition reads: "The plaintiffs further say that on or about March 1, 1910, which was about the time they discovered the fraud herein set forth, they offered to deed back the defendants' land and allow credit for $700, if defendants would return their note and mortgage and drug store, and the defendants refused to do so." The plaintiffs further claim that on or about March 1, 1910, which was about the time they discovered the fraud herein set forth, they offered to trade back with the defendants, and the defendants would not trade back. Plaintiffs contend that at that time they offered to deed back to defendants their property, to wit, the Missouri farm, and pay back the $700, if defendants would return their note and mortgage and their drug store. The plaintiffs charge that the defendants admit the contract for the exchange of property; that defendants were fully informed as to the truth of the matters relating to the trade; that the defendants acted on their own judgment.

It is contended by the defendants that the proceeding should have been one in equity; that if the stock had been, in substance, in such condition that it could have been replevied, the plaintiffs had the right to replevy both the property and the note, and that, if the property could not have been reached, then the action would properly pro-

ceed as one in equity for the value of the property; that, in fact, this was done in this case.

Counsel for plaintiffs say in their brief that the amendments were made because it was the opinion of the trial judge that it was necessary that such amendments should be made, and that counsel for plaintiffs were acting in conformity to the express will of the presiding judge at the trial; that, in regard to the amendment, it was within the discretion of the court; the statute of the state upon amendments so stating and having been so construed. In *Scroggin v. Johnston,* 45 Neb. 714, the plaintiff brought an action in ejectment, and the plaintiff pleaded a contract entered into by plaintiff for the sale of the premises, and demanded affirmative equitable relief. The plaintiff was permitted to file an amended petition (pleading) changing the form of the action from ejectment to that of foreclosure of the contract. Held, not reversible error. In *Scherar v. Prudential Ins. Co.,* 63 Neb. 530, it was held it is within the discretion of the trial court to permit a defendant to amend his answer, and error cannot be predicated upon it unless an abuse of discretion is shown and prejudice resulting therefrom. Held, in *Brown v. Rogers & Bro.,* 20 Neb. 547: "The court, upon such terms as may be just, may permit the amendment of a pleading after the evidence is introduced, and before the cause is submitted to the jury, and, unless there is an abuse of discretion in the action of the court, error will not lie." In *McKeighan v. Hopkins,* 19 Neb. 33, it was held: "A court may permit a petition to be amended when the proposed amendment does not change substantially the claim, although the form of the action may be changed. So long as the identity of the cause of action is preserved, the form of the action is not material. A petition in ejectment, therefore, may be amended to be a petition to redeem; the object in both cases being to recover the land."

It is contended that the case was fairly submitted to the court and jury upon the evidence and pleadings, and that the jury found a verdict for the plaintiff for $2,800 and interest, and that this should not be disturbed. It is

admitted on all hands that the plaintiff failed to pay off the $1,000 mortgage upon the Atchison county land. After the foreclosure suit was instituted the plaintiff Rodney A. Rawlins saw the defendant Charles E. Erskine in Sioux City, Iowa, about March 1, 1910, and asked Erskine to take up the second mortgage, upon which the foreclosure suit was started, claiming that it was agreed at the time the trade was made that, if the plaintiffs were unable to take up that mortgage, defendants would take it up. Erskine denied this agreement. The plaintiffs claim that they rescinded the contract; that they demanded the drug stock to be returned, and offered to reconvey the farm in Atchison county to defendants, and to repay the $700 which they paid out to clear the drug store from incumbrances. The defendants claim that after the trade was made the plaintiff Rodney A. Rawlins went and examined the land for which he had traded, and solicited the defendants to assist him in selling or trading the land for other property. Erskine denied any agreement to take up the mortgage for Rawlins. The plaintiffs claim that because of such denial they rescinded the contract and demanded the drug store back, and offered to reconvey the farm in Atchison county. There is a conflict of evidence, and because of this conflict it is necessary to pay some attention to the testimony.

Rodney A. Rawlins testified: "Q. And thereupon you for the first time said to Mr. Erskine, in substance, that it looks as if I was being swindled or cheated here, and if you won't put this money up on this mortgage or take care of it I want to rescind this trade, or I want to trade back? A. Yes, sir. Q. You give me back my property and I will deed this farm back to you and give you credit for the $700 that you paid out on the stock? A. Yes, sir. Q. That is substantially what took place? A. Yes, sir. Q. And you said you would fix the matter of the money that they had paid out on account of the mortgage, and that belongs on the farm; you said that you would fix that? A. Yes, sir. Q. Have I stated fairly, Mr. Rawlins, the

substance of that conversation had on that subject in the Mitchell Hotel at that time?  A.  Yes, sir."

It is seriously contended by the defendants that there was no bargain to advance $1,000 to pay off the small mortgage.  It is not seriously contended that the trade was a fair trade.  Each side claims that there was misrepresentation on the other side.  We are not inclined to think that the contention of plaintiffs that there was an accretion to the farm purchased is well founded.  The mortgages against the land were large mortgages.  It is apparent that the plaintiffs were getting little or nothing. They had a drug store free from debt except $700.  They traded it for land that was of no practical value.  Whether they were induced to do so by false representations can only be gathered from the testimony.  It is alleged that there were representations made that there was fine building material on the land, while, as a matter of fact, there was no such material on it.  The evidence seems to sustain that view.

After the amendment to the petition, counsel for defendant made a motion that the case should be transferred to the equity side of the court and should be tried as an equity case.  Both parties were trying the case to a jury. They had introduced evidence; they were just ready to submit their controversy.  It would seem that the motion was not made with serious intent.  It is claimed that the plaintiffs affirmed the contract; that they did so by suing for fraud, and authorities are cited along that line.  It is clear that plaintiffs wanted damages.  It is also clear that they lost their drug store by reason of the representations of defendants.  It is also in evidence that they tried to trade back.  They seem to have begged and coaxed industriously but their efforts were futile.  Fraud or misrepresentation as to the quality or condition of the premises contracted for is ground for rescission, provided the statement is material, and is not the mere expression of an opinion; and is made under such circumstances as entitles the purchaser to rely on such statement.  39 Cyc. 1269, and cases cited.

"Where * * * the purchaser resides near the property, and has knowledge of its value, and the owner is a resident of another state, and has no knowledge on that subject, statements of the purchaser representing the property to be greatly beneath its true value, and that the vendor's title has been conveyed by sale for taxes, will be sufficient to avoid the deed given by such purchaser." *Morgan* v. *Dinges,* 23 Neb. 271.

In *Ross* v. *Sumner,* 57 Neb. 588, this court held, where the vendor of land makes a false representation as to the character of the land, its location, and its value, under circumstances justifying the vendee in relying thereon, such misrepresentation is ground for a rescission of the contract. In such case the supreme court will not disturb a finding based upon a conflict of evidence.

At the close of the case, after the evidence was all in, the defendants moved for a directed verdict. This motion was overruled, and the case was submitted to the jury. There is a conflict in the evidence. The jury had an opportunity to determine whether they would believe the plaintiffs' evidence or the defendants.' They seem to have accepted the plaintiffs' evidence as true. We are unable to say that the finding of the jury is wrong. There is much to justify the conclusion reached by the jury. We are not inclined to disturb the verdict under the circumstances.

An examination of the instructions fails to disclose prejudicial error.

The judgment of the district court is

AFFIRMED.

LETTON, FAWCETT and SEDGWICK, JJ., not sitting.