# KUNSE *v.* KNIGHTS OF THE MODERN MACCABEES.

[No. 6,603. Filed December 14, 1909.]

1. INSURANCE.—*Mutual Benefit Societies.—Suicide Clauses.—Sane or Insane.*—A mutual benefit certificate providing that "no benefit shall be paid in case the member commits suicide, within five years, whether sane or insane," does not insure against hanging while insane. p. 33.

2. INSURANCE.—*Policies.—Conditions.—Suicide.*—Mutual benefit associations have the right to exclude from their risks liability for self-destruction, sane or insane. p. 35.

From Miami Circuit Court; *Frank D. Butler,* Judge *pro tem.*

Action by Margaret J. Kunse against the Knights of the Modern Maccabees. From a judgment for defendant, plaintiff appeals. *Affirmed.*

*J. A. Shunk* and *T. W. Anabal,* for appellant.
*J. B. McIlwain* and *Adam E. Wise,* for appellee.

WATSON, J.—This action was instituted in the lower court by the appellant, as the widow and duly designated beneficiary of Joseph B. Kunse, deceased, to recover $500, the amount of the benefit certificate issued by the appellee upon the life of said decedent. Said association agreed to pay to the duly designated beneficiary one assessment upon its membership not exceeding $500, $1,000, $1,500 or $2,000 as he may elect in his application for membership. The appellee enacted by-laws, among them being the following, which was in force at the time the insured became a member and continued to be at the time of his death.

"Section 78. No benefits shall be paid on account of the death or disability of a member while engaged in a mob, riot or insurrection, * * * or when death was the result of suicide within five years after admission to life benefit membership, or when the death of such a member was intentionally caused by the beneficiary or beneficiaries of such member, and in all cases where death results from suicide within five years after admission to life benefit membership, whether member was sane or insane at the time of death, the beneficiary or beneficiaries of the member shall only be paid the amount of money which the member has paid into the life benefit fund, which amount shall be the full amount which shall be claimed in any such case; provided that no benefit certificate of any member shall be invalid where the member has been adjudged insane, prior to his death, by any court of competent jurisdiction."

The insured departed this life on June 27, 1906, and thereafter the appellant made due proof of his death to appellee, who stated the insured came to his death by suicidal hanging. The appellee refused to pay to appellant the sum of $500 provided for in said benefit certificate, but tendered her its check for $8.75, the amount claimed by appellee to have been paid into its life benefit fund by the insured, which appellant refused to accept.

The complaint was in one paragraph, based upon a benefit certificate issued by the appellee to said decedent, to which complaint the appellee filed its answer in two paragraphs. The first was a general denial, and the second averred that said appellee was a corporation duly organized under the laws of the State of Michigan, and sought to avoid liability under said benefit certificate by setting out section seventy-eight of the by-laws of the said company, before quoted; that said decedent came to his death by suicide, in violation of said by-laws; that said beneficiary reported the death of said decedent to appellee, which showed that Joseph B. Kunse came to his death from suicide by hanging, within one year after becoming a member of said association; that said decedent had contributed, during his membership, the sum of $8.75, for which sum appellee had theretofore forwarded a draft to Margaret J. Kunse, widow, in payment of said dues, which draft she had received and returned to appellee.

To this second paragraph of answer the appellant addressed a demurrer for want of facts, which was overruled and exceptions taken. Appellant replied to said second paragraph of answer in two paragraphs. The first admitted that the assured, Joseph B. Kunse, came to his death by hanging himself, but averred that he was forced to do so by an "irresistible, insane impulse," and that the act was "wholly involuntary, unintentional and accidental;" that he was "wholly insane and totally incapable of forming an intention to take his own life," and that his death was the immediate result

of "such insane frenzy which he was powerless to resist." The second paragraph admitted Joseph B. Kunse came to his death by hanging himself, but averred that the assured was insane prior to and at the time of his death, and was so adjudged and found to be insane by David C. Ridenour, coroner of Miami county, Indiana, who investigated how and in what manner the assured came to his death, and made the following finding: "I, David C. Ridenour, coroner of said Miami county, having examined the body of Joseph B. Kunse, and having heard the testimony of witnesses, which said testimony is hereto attached, do hereby find that said decedent came to his death on June 27, 1906, at, about, or between the hours 4 and 4:45 o'clock p. m., in a barn of the Huffman property, corner of Fifth and Wabash streets, in Peru, Miami county, Indiana; that said death was caused by strangulation from suicidal hanging, following or as a result of a demented mind."

To each of these paragraphs of reply the appellee filed a demurrer for want of facts, which demurrers were sustained and exceptions saved, whereupon appellant refused to plead further and judgment was rendered upon said demurrers.

The errors relied upon for reversal are: (1) The overruling of appellant's demurrer to appellee's second paragraph of answer; (2) the sustaining of appellee's demurrer to each paragraph of appellant's reply; (3) the sustaining of appellee's motion for judgment.

The ruling on the several demurrers at the last analysis brings us to the proposition whether a beneficiary can recover upon a policy of a society which had incorporated in its by-laws, at the date of the policy, that "no benefit shall be paid in case the member commits suicide, within five years, whether sane or insane." It is averred in the answer and admitted by the appellant that the assured committed suicide by hanging, but it is claimed he was forced to do so by an insane frenzy which he

was powerless to resist. The contention of the appellant is that the policy is not avoided by the terms thereof and the by-laws of the association, if the assured did not understand the physical nature of his act. We are, however, unable to reach the conclusion that the decedent did not know that death would follow from hanging, or that he did not do just what he intended to do. But this association, in the absence of any law to the contrary, had the right to make such a contract as was made, and to provide against liability under the policy if the assured should come to his death by self-destruction, whether he was sane or insane. The language is plain and unambiguous, and means just what it says. *Union Central Life Ins. Co.* v. *Hollowell* (1896), 14 Ind. App. 611; *Union Mut. Life Ins. Co.* v. *Payne* (1900), 105 Fed. 172, 45 C. C. A. 193; *Dennis* v. *Union Mut. Life Ins. Co.* (1890), 84 Cal. 570, 24 Pac. 120; *Sargeant* v. *National, etc., Co.* (1899), 189 Pa. St. 341, 41 Atl. 351; *Supreme Commandery, etc.,* v. *Ainsworth* (1882), 71 Ala. 436, 46 Am. Rep. 332; *Sabin* v. *Senate of the National Union* (1892), 90 Mich. 177, 51 N. W. 202; *Douglas* v. *Knickerbocker Life Ins. Co.* (1881), 83 N. Y. 492; *Seitzinger* v. *Modern Woodmen, etc.* (1903), 204 Ill. 58, 68 N. E. 478; *Spruill* v. *Northwestern Mut. Life Ins. Co.* (1897), 120 N. C. 141, 27 S. E. 39; *Brower* v. *Supreme Lodge, etc.* (1898), 74 Mo. App. 490; *Johns* v. *Northwestern Mut. Relief Assn.* (1895), 90 Wis. 332, 63 N. W. 276, 41 L. R. A. 587; *Hart* v. *Modern Woodmen, etc.* (1899), 60 Kan. 678, 57 Pac. 936, 72 Am. St. 380; *Clarke* v. *Equitable Life, etc., Society* (1902), 118 Fed. 374, 55 C. C. A. 200; *Bigelow* v. *Berkshire Life Ins. Co.* (1876), 93 U. S. 284, 23 L. Ed. 918; *Billings* v. *Accident Ins. Co.* (1892), 64 Vt. 78, 24 Atl. 656, 17 L. R. A. 89, 33 Am. St. 913; Vance, Insurance, p. 522; 2 Bacon, Benefit Soc. (3d ed.), §336.

In the case of *Clarke* v. *Equitable Life, etc., Society, supra,* the court construed the condition, and held that the provi-

sion, "self-destruction, sane or insane," was a risk not assumed by the society in the contract. In that case the evidence showed the insured shot himself in the head with a pistol. Plaintiffs, in their replication admitting the shooting, averred that the mind of the assured "was so impaired and affected by insanity that he was not conscious of the physical nature and consequences of the act he committed, and did not intend to cause his death, but was moved to commit said act by irresistible impulse." The court sustained a demurrer to the replication, which ruling, on appeal, was sustained by the circuit court of appeals. In sustaining said appeal the court said: "If it was an open question, there is much to be said of the injustice of contracts of this nature, for a person ought no more to be held responsible for the loss of his life when taken by himself under the ravings of delirium, or impelled by the hallucinations of melancholy, than if he dies from an ordinary disease, or from an accident; but that question is not before us, and it seems to be well settled that insurance companies may avoid altogether this class of risks, and that, being at liberty to stipulate against hazardous occupations, unhealthy climates, or deaths from consumption or other excepted diseases, they may also contract not to assume a risk of a certain mode of death, and presumably the premiums are calculated on the elimination of that risk. If the assured is informed, in apt words, of the extent of the limitation, it is not perceived that there is any good reason why such contract should not be governed by the same rules of interpretation which control courts in all other cases of contract, and why plain and unambiguous words should be frittered away by casuistry and refinement."

We quite agree with the reasoning in the quotation just given; but, it being admitted that the assured died by his own act, and governed as we are by the plain language of the contract, we must conclude that the association did not assume the risk of self-destruction.

The trial court did not commit error in its ruling upon the several demurrers.

Judgment affirmed.