In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 06-4397 & 07-1041

PLASTICS ENGINEERING COMPANY,

*Plaintiff-Appellee,*
*Cross-Appellant,*

*v.*

LIBERTY MUTUAL INSURANCE COMPANY,

*Defendant-Appellant,*
*Cross-Appellee.*

---

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 04 C 825—**Aaron E. Goodstein**, *Magistrate Judge.*

---

ARGUED SEPTEMBER 6, 2007—DECIDED JANUARY 22, 2008

---

Before FLAUM, MANION, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Liberty Mutual Insurance Company ("Liberty Mutual") appeals the first and third holdings of the district court's final declaratory judgment in a case that determined the defense and indemnity obligations of Liberty Mutual with respect to asbestos lawsuits against Plastics Engineering Company ("Plenco"). Plenco, in turn, appeals the second holding. The three challenged holdings present important questions of Wisconsin law that are presently unresolved by Wis-

consin appellate courts and are likely to recur in future lawsuits: (1) what constitutes an "occurrence" in an insurance contract when exposure injuries are sustained by numerous individuals, at varying geographical locations, over many years; (2) whether Wisconsin Statute § 631.43(1) applies to successive insurance policies; and (3) whether Wisconsin courts would adopt an "all sums" or pro rata allocation approach to determining liability when an injury spans multiple, successive insurance policies. Because current Wisconsin law does not provide sufficient guidance as to how the Wisconsin Supreme Court would resolve these issues, we stay this appeal and certify three questions to the Wisconsin Supreme Court, pursuant to Circuit Rule 52 and Wisconsin Statute § 821.01.

## I. HISTORY

Plenco, a Wisconsin Corporation with its principal place of business in Sheboygan, Wisconsin, began manufacturing molding compounds in 1934. Plenco has been named as defendant in hundreds of lawsuits for claims arising from individuals' exposure to the company's asbestos-containing products, which Plenco manufactured from 1950 until 1983. Liberty Mutual, a Massachusetts corporation with its principal place of business in Massachusetts, provided primary general liability insurance policies to Plenco beginning in September 1957. Plenco began purchasing umbrella excess liability policies from Liberty Mutual in May 1970, and save for a two-year period when Plenco purchased umbrella coverage from another insurer, continued to purchase umbrella policies from Liberty Mutual at least until 2003. To date, Liberty Mutual has paid all of Plenco's defense costs, settlements, and judgments stemming from the asbestos lawsuits.

Liberty Mutual advised Plenco in 2004 that it would only pay "its proportionate share of reasonable and

necessary defense costs." However, Liberty Mutual has continued to pay all of Plenco's defense costs, settlements, and judgments under a reservation of rights. On September 1, 2004, Plenco filed a complaint in district court, against Liberty Mutual, on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1332. Plenco sought a declaratory judgment that Liberty Mutual was obligated, under the terms of the insurance policies purchased by Plenco, to fully defend and indemnify Plenco in connection with all of Plenco's pending and future asbestos-related lawsuits. In response, Liberty Mutual sought an opposing declaration that it was not obligated to pay certain defense and indemnification expenses, including some it had been paying on behalf of Plenco, and that it was entitled to a refund for overpaid amounts.

The parties stipulated to a joint statement of facts, which outlined the insurance policies at issue in the suit (primary policies between February 9, 1968, and January 1, 1989; umbrella policies from May 8, 1970, to January 1, 1984; and umbrella policies from January 1, 1986, to January 1, 1998), and detailed the particular policy language in dispute. Thereafter, both Plenco and Liberty Mutual filed cross-motions for summary judgment.

The district court issued a decision and order on October 2, 2006, which granted in part and denied in part each party's motion for summary judgment. On December 6, 2006, the court entered a final declaratory judgment, to which both parties consented. Specifically, the court concluded that: (1) per the terms of the policies in question, each individual person's injury caused by exposure to Plenco's asbestos-containing products constitutes a separate "occurrence"; (2) when an injury is sustained over numerous, successive policy terms, the policies' non-cumulation provisions—which the court held do not violate Wisconsin Statute § 631.43(1)—limit Liberty Mutual's obligation for an individual claimant's recovery

to the maximum amount allowed in a single triggered policy for an occurrence; and (3) under the terms of the policies, Liberty Mutual is obligated to pay all sums accruing from an injury that triggers any one policy, and is not entitled to a pro rata contribution from Plenco where the injury in question occurs partly within and partly outside of the Liberty Mutual policy period.

## II. ANALYSIS

In this appeal, Liberty Mutual challenges the district court's "occurrence" holding and its "all sums" allocation holding. Plenco's cross-appeal challenges the district court's holding on § 631.43(1). All three issues—the definition of "occurrence" in the context of long-tail exposure injuries, the applicability of § 631.43(1) to successive insurance policies, and the allocation of liability when an injury spans multiple insurance policies—present unsettled questions of state law that will directly affect the outcome of this appeal, and that will undoubtedly affect the outcome of future cases under Wisconsin law. We consider each issue in turn, briefly discussing the arguments raised by the parties and the relevant points of Wisconsin law.

### A. *Definition of "Occurrence" in Asbestos Litigation*

The insurance policies provide that Liberty Mutual's liability for bodily injury will be limited to a certain amount per "occurrence." Thus, the extent to which Liberty Mutual must indemnify Plenco depends directly on the number of occurrences underlying the asbestos lawsuits. The primary policies contain a provision qualifying "occurrence" for exposure injuries, which stated (with insignificant wording changes depending on the policy year): "all bodily injury and property damage arising out

of the continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence." Plenco and Liberty Mutual debate the number of occurrences underlying the lawsuits; the district court ultimately held that each individual's exposure to Plenco's asbestos-containing products constituted a separate occurrence under the insurance policies.

Wisconsin law provides some guidance as to what constitutes an "occurrence" in insurance contracts. In *Olsen v. Moore*, the Wisconsin Supreme Court adopted the "cause theory" test for identifying an occurrence: if a single, uninterrupted cause "results in a number of injuries or separate instances of property damages," it is considered one occurrence. 202 N.W.2d 236, 240 (Wis. 1972). "If, however, that cause is interrupted or replaced by another cause the chain of causation is broken and more than one accident or occurrence has taken place." *Id.* As the district court pointed out, a cause and result that are closely linked in time and space are likely to be viewed as one occurrence. *See Welter v. Singer*, 376 N.W.2d 84, 87 (Wis. Ct. App. 1985).

The cause theory test for an occurrence has been applied by Wisconsin courts in the context of exposure to dangerous conditions. In *Society Insurance v. Town of Franklin*, damages to surrounding property that were caused by a contaminated landfill were said to have resulted from one continuous occurrence—but the number of occurrences was not an issue in the case. 607 N.W.2d 342, 345 (Wis. Ct. App. 2000). In *Wisconsin Electric Power Co. v. California Union Insurance Co.*, the Wisconsin Court of Appeals held that there was one uninterrupted occurrence that began when a power supply was installed, and continued while the power supply was in order. 419 N.W.2d 255, 258 (Wis. Ct. App. 1987). Although these cases may be analogous to the asbestos realm, they are different in one significant respect. In *Society Insurance*

and *Wisconsin Electric*, the damage stemmed from exposure that happened at one geographical site. Here, the company manufactured asbestos at its Wisconsin plant, but much of the exposure to asbestos happened at varying locations across the country, where Plenco's products were incorporated into other manufacturers' products.

Liberty Mutual invokes the "cause test" in arguing that there was one cause underlying all of Plenco's asbestos lawsuits: the continuous manufacture and sale of asbestos-containing molding compounds. Plenco, in contrast, argues that the manufacture of asbestos itself caused no harm—each individual's subsequent exposure to asbestos caused that individual's injury. Plenco emphasizes that the thousands of lawsuit claimants allege asbestos exposure that occurred at different locations, at different times, under different circumstances, via different Plenco products. Both parties cite several cases from other states and federal courts to support their positions, ultimately highlighting the varied interpretations other jurisdictions have accorded the term "occurrence."

It is clear that an occurrence under Wisconsin law can be "'ongoing' and span a large amount of time, but still be one occurrence within the meaning of the policy." *Jonas Builders, Inc. v. United States Fidelity & Guaranty Co.*, 639 N.W.2d 223 (Wis. Ct. App. 2001) (unpublished table decision). However, whether the type of long-term manufacture of, and exposure to, asbestos at issue here constitutes one occurrence under Wisconsin law is unresolved; guidance from the Wisconsin Supreme Court would be useful.

### B. Applicability of Wisconsin Statute § 631.43(1) to Successive Insurance Policies

Plenco argues that certain provisions in the insurance policies violate § 631.43(a) because they limit Liberty

Mutual's liability for one occurrence to the coverage amount of any one policy that is triggered by the occurrence. In so doing, the provisions eradicate significant amounts of coverage that Plenco purchased from Liberty Mutual over the years. Wisconsin Statute § 631.43(1), titled "Other insurance provisions," provides that

> [w]hen 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions.

One of the policy provisions Plenco believes violates the statute reads, in part:

> [I]f an occurrence gives rise to Bodily Injury or Property Damage which occurs partly before and partly within the policy period the liability of the company under this policy for such occurrence shall not exceed $500,000 minus the total of all payments made with respect to such occurrence under a previous policy or policies of which this policy is a replacement. The policies may by their terms define the extent to which each is primary and each excess . . . .

Liberty Mutual argues that the statute applies only to "other insurance" provisions in policies—"other insurance" provisions being particular types of clauses that delineate the primary and excess coverage between multiple, concurrent polices that cover the same loss. The application of § 631.43(1) does seem to have been limited to concurrent policies. *See, e.g.*, *id.*; *Tahtinen v. MSI Ins. Co.*, 361 N.W.2d 673 (Wis. 1985)*; Krause v. Mass. Bay Ins. Co.*, 468 N.W.2d 755 (Wis. Ct. App. 1991). The district court relied on the distinction between concurrent policies and successive policies when it held that

§ 631.43(1) does not apply to the non-cumulation provisions in Plenco's policies, which are successive.

Plenco, on the other hand, argues that § 631.43(1) generally prohibits attempts by insurers to reduce or eliminate insurance coverage insureds have paid for. Plenco believes the district court incorrectly held that § 631.43(1) applies only to concurrent insurance policies, noting that had the legislature desired to limit the statute in that manner, it could easily have done so by directly writing the limitation into the provision. Further, Plenco points to other states that have not limited the definition "other insurance" provisions to concurrent policies.

While issues pertaining to § 631.43(1) have arisen in Wisconsin appellate courts, to our knowledge the specific question at issue here—whether § 631.43(1) prohibits an insurance company from limiting coverage for any given "occurrence," which triggers multiple successive policies, to the limit of a single policy year—has never been addressed. We therefore request guidance from the Wisconsin Supreme Court regarding whether § 631.43(1) applies to successive insurance policies.

## C. "All Sums" or Pro Rata Allocation of Insurer Liability

The district court's third holding addressed the allocation of liability among insurers when an injury triggering one policy occurs partly within and partly outside of that policy period. The ultimate issue is whether an insurer is responsible to pay "all sums" associated with the injury, subject to policy limits, or alternatively, whether the insurer is responsible only for a pro rata share of the costs, based on the proportion of the injury that occurred during the policy period. In considering the specific contract language, the district court explained: "[a]lthough

the language varies slightly throughout the numerous policies, Liberty's obligations can be summarized as an obligation to pay 'all sums' that Plenco should be obligated to pay as the result of personal injury that occurred during the policy period."

There are two sub-issues within the "all sums" allocation debate. The first concerns the insurer's defense obligations when an insured faces a claim that triggers one insurance policy. The second relates to the insurer's indemnification obligations arising from adverse judgments and settlements against the insured. The Wisconsin Supreme Court has held that "the duty to defend is broader than the duty to indemnify." *Reid v. Benz*, 629 N.W.2d 262, 267-68 (Wis. 2001). "'The duty of defense depends on the nature of the claim and has nothing to do with the merits of the claim.' The duty to indemnify, in contrast, arises when . . . the claim is within the parameters of the policy and the insured is adjudged liable." *Id.* (quoting *Elliott v. Donahue*, 485 N.W.2d 403, 407 (Wis. 1992)).

1. Duty to Defend

Plenco argues that the policies unambiguously assign to Liberty Mutual an absolute duty to defend entire asbestos lawsuits, not just portions of such suits, and cites Wisconsin case law to support its position. *Grube v. Daun*, 496 N.W.2d 106, 122 (Wis. Ct. App. 1992) ("[T]he insurance company must defend the action when some of the allegations in the complaint fall within the policy coverage because 'apportionment of responsibility for the defense is neither practical nor desirable.'" (quoting *Engsberg v. Town of Milford*, 597 F. Supp. 251, 256 (W.D. Wis. 1984)).

Liberty Mutual contends that the policies' definitions of bodily injury—injury occurring "during the policy pe-

riod"—necessarily limits the insurer's defense liability to the pro rata share that corresponds with the injury attributable to the policy period. It acknowledges that Wisconsin law has imposed broad defense obligations on insurers when one policy is triggered, but argues that those obligations should not be imposed in "this context where the defense obligation can be allocated easily."

The issue of allocating defense costs has been litigated in Wisconsin courts, and the law appears to favor Plenco's position: "[i]f some coverage exists, the insurer must defend the entire action, even though certain allegations may fall outside the scope of coverage." *U.S. Fire Ins. Co. v. Good Humor Corp.*, 496 N.W.2d 730, 737 (Wis. Ct. App. 1993). Additionally, "the proper procedure for an insurance company to follow when coverage is disputed is to request a bifurcated trial on the issues of coverage and liability and move to stay any proceedings on liability until the issue of coverage is resolved." *Reid*, 629 N.W.2d at 269 (citing *Elliott,* 485 N.W.2d at 406). Liberty Mutual has been defending Plenco in its asbestos lawsuits for years; there is no evidence in the record suggesting that Liberty Mutual contested its coverage of the alleged asbestos injuries at the outset of the lawsuits, so as to limit its defense costs, or that it sought to stay liability proceedings to challenge coverage.

We feel that Wisconsin law generally requires insurers to defend suits in their entirety. Nonetheless, this issue may become more complicated if Wisconsin courts follow a pro rata allocation approach for indemnification liability. If damages are allocated between insurers based on the percent of the injury that happened in each policy period, the same principles of proration may support allocation of defense costs. As discussed below, we are asking the Wisconsin Supreme Court to decided whether Wisconsin law follows an "all sums" or pro rata allocation approach, and we ask that it consider the

implications for both the insurer's duty to defend and its duty to indemnify. We turn now to the latter.

### 2. Duty to Indemnify

With respect to the indemnification of damages under the policies, Plenco again argues that the plain language of the contracts dictates that Liberty Mutual is obligated to pay "all sums"—not just some portion of the damages incurred by Plenco. The insurance policies never mention proration of liability directly, and Plenco asserts that if its insurer is only obligated to pay a pro rata share of the insured's liability, Plenco's reasonable expectation of complete security in its insurance contracts would be violated. Plenco contends that, at the very least, even if the "all sums" language is ambiguous in the policies, the ambiguity would weigh in favor of the insured and against the insurer who drafted the contract.

Liberty Mutual, on the other hand, argues that Wisconsin courts would adopt a pro rata approach to allocating liability among insurers of long-term injuries spanning multiple years. Liberty Mutual feels that the district court put too much weight on the words "all sums," while ignoring the policies' "bodily injury" definitions, which Liberty Mutual believes clearly and ambiguously limited coverage only to bodily injury that occurred during the policy period. Liberty Mutual stresses that insurers provide coverage for specific policy periods and argues that they should not be forced to pay for costs related to injuries occurring partially outside of those policy periods.

The *amicus curiae*, Wisconsin Utilities Association (WUE), encourages the court to adopt an "all sums" approach to allocation both generally and in this particular case. WUE points out that Liberty Mutual's policies with Plenco contain "anti-proration clauses" that directly

contemplate the insurer's coverage of injuries that occur "partly before and partly within the policy period." These clauses limit the insured's recovery amount for any one occurrence to the maximum of one policy, minus anything already paid out under a previous policy. The clauses WUE cites are the same clauses that Plenco believes violate § 631.43(1). *See supra* Part II.B. WUE classifies these provisions as "anti-proration clauses," because they "telescope" coverage for a continuing occurrence into one policy year. WUE claims that anti-proration provisions are irreconcilable with the proration of a single continuous occurrence: an insurer cannot collapse an injury into a single policy year for one purpose (limiting the total coverage amount), but treat it as a drawn-out injury for another purpose (prorating costs between insurers). WUE goes on to make policy arguments similar to those advanced by Plenco to further its position that an "all sums" approach to allocation is desirable and likely to prevail in Wisconsin.

It does not appear that this issue—whether an insurer's indemnification duties should be limited to a pro rata share—has been addressed by the Wisconsin Supreme Court or the Wisconsin Court of Appeals. Both parties and the *amicus curiae* rely on case law from other states, about half of which supports an "all sums" approach, with the other half supporting pro rata allocation. This matter is laden with policy considerations; we believe that the Wisconsin Supreme Court is a better-situated and more appropriate tribunal to determine the contours of Wisconsin Law on this issue. *See Doe v. American Nat. Red Cross*, 976 F.2d 372, 374 (7th Cir. 1992) ("It would be more appropriate for the Supreme Court of Wisconsin to address this . . . question than the federal judiciary in view of the fact that it is an important public policy choice that no doubt will apply to many cases in the future.").

*D. Certification Analysis*

Plenco moved for certification pursuant to Circuit Rule 52, which allows us to certify to a state's highest court questions of state law that will control the outcome of a pending case if the rules of the state's highest court allow it to entertain such questions. Cir. R. 52. Wisconsin law permits the Wisconsin Supreme Court to consider and respond to certified questions of state law, provided the questions "may be determinative of the cause . . . pending in the certifying court and as to which there is no controlling precedent in the decisions of the supreme court and the court of appeals of [Wisconsin]." Wis. Stat. § 821.01. Liberty Mutual opposes certification and points out that Plenco filed this case in federal district court in the first place—urging us to bind Plenco to its chosen forum. While we do "take into account whether the request for certification to the state court came from the party who chose federal jurisdiction in the first place," *Brown v. Argosy Gaming Co., L.P.*, 384 F.3d 413, 417 (7th Cir. 2004), this factor is not determinative on its own. If Circuit Rule 52 permits the Wisconsin Supreme Court's consideration of significant, state-law questions, we are authorized to, "sua sponte or on motion of a party," certify those questions. Cir. R. 52.

A case is appropriate for certification where it " 'concerns a matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity illuminate a clear path on the issue.' " *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 639 n.18 (7th Cir. 2002) (quoting *In re Badger Lines, Inc.*, 140 F.3d 691, 698-99 (7th Cir. 1998)). Questions that are tied to the specific facts of a case, however, typically are not ideal candidates for certification. *Id.* If the outcome of a case is largely fact-dependent, and the facts are particularized to the case,

resolution of the issues by a court may have limited precedential value; thus, certification to a state supreme court may be inappropriate. *Erie Ins. Group v. Sear Corp.*, 102 F.3d 889, 892 (7th Cir. 1996); *Woodbridge Place Apartments v. Washington Square Capital, Inc.*, 965 F.2d 1429, 1434 (7th Cir. 1992).

The interpretation of any contract necessarily involves analysis of the particular contract language at issue, and application of case-specific facts. *Woodbridge Place Apartments,* 965 F.2d at 1434. However, not all contract interpretation questions are of limited precedential value and inappropriate for certification. In *Transamerica Insurance Co. v. Henry*, we asked the Indiana Supreme Court to explain whether a certain state law rendered Indiana a "compulsory insurance state," and whether the contested application of a "household exclusion clause" in an automobile insurance policy violated the public policy of Indiana. 904 F.2d 387, 391 (7th Cir. 1990). A similar question regarding household exclusion clauses was certified to the Indiana Supreme Court in *Allstate Insurance Co. v. Boles*, 481 N.E.2d 1096 (Ind. 1985). Where resolution of contract questions by a state's highest court will be useful beyond the parameters of the instant dispute, and the other criteria for certification are met, certification is appropriate.

The contract provisions in question here, while somewhat unique to the parties, contain standardized language that undoubtedly appears in other insurance contracts governed by Wisconsin law. The definition of occurrence in the policies—an "accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured"—mirrors standard insurance policy definitions of occurrence: "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property

damage neither expected nor intended from the stand-point of the insured." John C. Yang, *The Fortuity Principle: Understanding the Fundamentals Underlying the Laws of Insurance*, 760 PLI/Lit 7 at 17 (2007). The "all sums" provisions in the contracts likewise mirror standard insurance policy language. *See* Michael G. Doherty, *Comment: Allocating Progressive Injury Liability Among Successive Insurance Policies*, 64 U. Chi. L. Rev. 257, 261 (1997) (noting that, in the standard General Commercial Liability contract, the insurer agrees to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' (caused by an occurrence) to which this insurance applies. . . . (The insurance company has) the right and duty to defend any 'suit' seeking those damages"). Non-cumulation provisions are also common, and are debated in litigation. *See* Randy Paar, *Recovery is in the Details: Hot Issues in the Administration and Application of General Liability Insurance Policies*, 86 PLI/NY 199, 224 (2000); Scott M. Seaman & Charlene Kittredge, *Excess Liability Insurance: Law and Litigation*, 32 Tort & Ins. L.J. 653, 687-89 (1997). How these provisions are inter-preted in the context of long-tailed exposure claims under Wisconsin law will significantly shape the future of insurance litigation in the state.

All three of the district court's holdings hinge on questions of state law that are of vital public concern and are likely to recur in other cases. We can find no Wisconsin cases addressing the specific questions raised, and resolution of these questions will control the outcome of this appeal. To our knowledge, the Wisconsin Supreme Court has not had the opportunity to "illuminate a clear path" on these issues. *Allstate Ins. Co.*, 285 F.3d at 639 n.18. We thus find that the questions in this case are appropriate for certification to the Wisconsin Supreme Court.

### III. CONCLUSION

We respectfully request that the Supreme Court of Wisconsin answer the following questions of law:

1. Under Wisconsin law, what constitutes an "occurrence" in an insurance contract when exposure injuries are sustained by numerous individuals at varying geographical locations over many years?

2. Does Wisconsin Statute § 631.43(1) apply to successive insurance policies when an occurrence is ongoing and spans multiple insurance policies, thereby prohibiting efforts by consecutive insurers to reduce coverage to the maximum of a single policy period?

3. In Wisconsin, are insurers obligated to pay "all sums" related to the defense and/or indemnification of an injury that triggers one insurance policy; or alternatively, are insurers liable for a pro rata share of defense costs and/or damages depending on how much of the injury occurred during the triggered insurance policy period?

We invite the Justices of the Wisconsin Supreme Court to reformulate these questions, if necessary. Likewise, we emphasize that nothing in this certification request should be read to limit the scope of the Wisconsin Supreme Court's inquiry.

The Clerk of this Court will transmit the briefs and appendices in this case as well as a copy of this order to the Wisconsin Supreme Court. Upon the request of the Wisconsin Supreme Court, the Clerk will transmit all or any part of the record as that court so desires. Further proceedings in this Court are stayed while this matter is considered by the Wisconsin Supreme Court.

QUESTIONS CERTIFIED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*