In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-2826

DEAN OFFICER,

*Plaintiff-Appellant*,

*v.*

CHASE INSURANCE LIFE AND ANNUITY COMPANY,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Indiana, Lafayette Division.
No. 06 C 127—**Allen Sharp**, *Judge.*

_____

DATE SUBMITTED JANUARY 24, 2008*—DECIDED SEPTEMBER 3, 2008

_____


Before POSNER, RIPPLE, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* This case questions the validity under Indiana law of a suicide exclusion clause in a life

_____

* Although oral argument was originally scheduled in this case, the parties filed a joint motion to waive oral argument. The court granted the motion, and this appeal is submitted on the briefs and records.

insurance policy. Dean Officer ("Officer"), as the benefi-
ciary of his wife's life insurance policy, brought this suit
against Chase Insurance Life & Annuity Company
("Chase") to recover the face amount of the policy. The
district court entered judgment in favor of Chase. We
affirm.

## I. Background

Chase issued a life insurance policy to Theresa Officer
("Theresa") in the amount of one million dollars. Officer
was named as the beneficiary, and the policy became
effective on February 11, 2004. The policy contained a
suicide provision limiting the benefits if the insured
committed suicide within two years of the effective date
of the policy. The Officers paid the premiums due in
2004 and 2005, totaling $540. Sadly, Theresa died of an
apparent self-inflicted gunshot wound on January 4, 2006.

Officer sent a claim to Chase in April 2006 as the benefi-
ciary of Theresa's life insurance policy. Chase sent Officer
$540, representing the amount the Officers had paid in
premiums. Officer filed suit in August 2006 in Jasper
County, Indiana, to recover the face value of the million
dollar policy. Chase removed the case to the Northern
District of Indiana. Officer filed a motion for summary
judgment, contending that the suicide provision was
ambiguous and constituted an unenforceable forfeiture.
The district court denied Officer's motion, finding that
as a matter of law the insurance policy was unambiguous,
valid, and enforceable. The parties then stipulated that
Theresa's death was a suicide and filed an agreed motion

for entry of final judgment in Chase's favor, with Officer reserving the right to appeal the denial of his summary judgment motion. The court entered final judgment on the uncontested facts in favor of Chase on July 18, 2007, and Officer now appeals.

## II.  Analysis

Officer appeals the district court's determination that the suicide exclusion clause was unambiguous, valid, and enforceable as a matter of law; the facts are uncontested since the parties stipulated that Theresa's death was a suicide. We review pure questions of law de novo. *Samuel C. Johnson 1988 Trust v. Bayfield County, Wis.*, 520 F.3d 822, 828 (7th Cir. 2008); *Klein v. DePuy, Inc.*, 506 F.3d 553, 554 (7th Cir. 2007).

### A.  Insurance Contract Ambiguity

When sitting in diversity, we must apply the substantive law of the state as we believe the highest court of that state would apply it when faced with the same issue. *Allstate Ins. Co. v. Keca*, 368 F.3d 793, 796 (7th Cir. 2004). Both parties agree that Indiana law applies here. Officer does not argue that Indiana law prohibits the exclusion of suicide under life insurance policies; Indiana has long permitted exclusions of this type. *See, e.g.*, *Nw. Mut. Life Ins. Co. v. Hazelett*, 4 N.E. 582 (Ind. 1886) (discussing a suicide exclusion and noting that "[i]t is neither unlawful, nor against public policy, for a contract of life insurance to stipulate that upon certain conditions or con-

tingencies the policy shall become void"); *Kunse v. Knights of the Modern Maccabees*, 90 N.E. 89, 91 (Ind. App. 1909) (enforcing a suicide exclusion). Instead, Officer argues that the provision is ambiguous and should be construed in his favor. To determine whether Officer is entitled to receive the face amount of the insurance policy, we refer to Indiana's law of contract interpretation. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). An insurance contract is subject to the same rules of interpretation as other contracts under Indiana law. *Morris v. Econ. Fire & Cas. Co.*, 848 N.E.2d 663, 666 (Ind. 2006). "If the language in the insurance policy is clear and unambiguous, then it should be given its plain and ordinary meaning, but if the language is ambiguous, the insurance contract should be strictly construed against the insurance company." *Id.* Indiana law is clear that an ambiguity does not arise merely because the two parties are able to create different interpretations of the policy language at issue. *USA Life One Ins. Co. of Ind. v. Nuckolls*, 682 N.E.2d 534, 538 (Ind. 1997). "Rather, the policy is ambiguous only if it is susceptible to more than one interpretation and reasonably intelligent persons would differ as to its meaning." *Id.* (internal quotation omitted).

Chase's suicide provision states:

> We will limit the proceeds we pay under this policy if the insured commits suicide, while sane or insane:
>
> > 1. within 2 years from the Date of Issue; and

2. after 2 years from the Date of Issue,
but within 2 years from the effective date
of the last reinstatement of this policy.

The limited amount will equal all premiums paid
on this policy.

Although courts in Indiana and other others states have frequently analyzed suicide clauses in insurance contracts, no court has construed the exact language at issue here. *See, e.g.*, *Commonwealth Life Ins. Co. v. Jackson*, 432 N.E.2d 1382, 1384 (Ind. Ct. App. 1982) (construing a suicide clause that stated: "the amount payable . . . shall be limited to the premium or premiums paid hereunder without interest"); *Cont'l Assurance Co. v. Krueger*, 66 N.E.2d 133, 134 (Ind. App. 1946) (construing a suicide clause that stated: "the liability of the company shall be limited to an amount equal to the premiums actually paid on this policy"); *Aetna Life Ins. Co. v. Doerr*, 115 N.E. 700, 701 (Ind. App. 1917) (construing a suicide clause that stated: "If the insured shall commit suicide within one year . . . this policy shall be null and void.").

Officer argues that the exclusion is susceptible to two meanings. First, the amount payable could equal the face value minus the premiums paid, or $999,460. Second, the amount payable could equal the amount of premiums paid, or $540. Obviously, Officer prefers the first interpretation and Chase prefers the second.

The district court rejected Officer's interpretation of the suicide provision and concluded that it was unambiguous as written. The court noted that the plain and ordinary meaning of the words "proceeds" and "amount"

are "virtually interchangeable." *Officer v. Chase Ins. Life & Annuity Co.*, 478 F. Supp. 2d 1069, 1075 (N.D. Ind. 2007). Although we can imagine improved ways to write this exclusion, we, too, conclude that the policy is not ambiguous as written. The first clause of the insurance provision sets out Chase's exclusion by stating: "We will limit the proceeds we pay." It then sets out the circumstances under which it will limit the proceeds. The final sentence states: "The limited amount will equal all premiums paid on this policy." None of these terms is defined, and so "the limited amount" most logically refers back to the first phrase. Combining those two phrases, the policy's meaning is clear: "The limited amount [of proceeds we pay] will equal all premiums paid on this policy." Officer's alternate interpretation—"We will limit the proceeds, and the amount by which they will be limited will equal the premiums paid"—is not a reasonable interpretation. If, as he suggests, the limited amount were equal to the face value minus the premiums paid, Chase would be required to pay more money where an insured committed suicide one day after buying the policy than it would have to pay one day before the suicide exclusion expired. Reasonably intelligent persons would not find that the provision was susceptible to Officer's interpretation.

Officer also argues that another portion of the policy uses clearer language: "The proceeds payable on the death of the insured are equal to . . . ." He asserts that because Chase knew how to clearly write "proceeds payable" elsewhere, the term "limited amount" can reasonably mean something else in the suicide provision. It is appro-

priate to look at the insurance contract as a whole in determining ambiguity, and courts should attempt to harmonize provisions rather than placing them in conflict. *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 252 (Ind. 2005). These two provisions are not in conflict, though. Chase could have used the same language in both provisions, but the fact that it used different language to express the amount of proceeds payable does not compel the conclusion that two otherwise unambiguous statements have become ambiguous.

## B. Disproportionate Forfeiture

Officer argues that, if the exclusion is not ambiguous, then Indiana courts would find that it was a disproportionate forfeiture or an illegal penalty. He asserts that there is no rational relationship between the harm Chase suffered by the breach of the suicide clause and the $999,460 loss he will suffer by being repaid only the premiums.

Officer cites several cases in which liquidated damages clauses were included in the parties' contracts. Liquidated damages refers to "a specific sum of money that has been expressly stipulated by the parties to a contract as the amount of damages to be recovered by one party for a breach of the agreement by the other, whether it exceeds or falls short of actual damages." *Time Warner Entm't Co. v. Whiteman*, 802 N.E.2d 886, 893 (Ind. 2004). While liquidated damages clauses are enforceable, they are treated as unenforceable penalties where they are "grossly disproportionate to the loss that may result from a breach of con-

tract." *Id*. at 894. To determine whether this clause results in an unenforceable penalty, Officer contends that we should "weigh the extent of the forfeiture by the obligee against the importance to the obligor of the risk from which he sought to be protected and the degree to which that protection will be lost if the non-occurrence of the condition is excused to the extent required to prevent forfeiture." Restatement (Second) of Contracts § 229 cmt. b (1981). Officer asserts that the only purpose of the two-year suicide provision is to prevent fraud. Here, the fraud purpose had been 95% fulfilled, since Theresa died thirty-four days prior to the expiration of the exclusion; therefore, he argues, a forfeiture of $999,460 is grossly disproportionate.

The district court concluded that the exclusion was enforceable because Chase was seeking to perform the policy as written; it was not demanding a forfeiture. Officer is correct that insurance companies often include suicide provisions in life insurance policies to prevent fraud by the insured. *See Commonwealth Life Ins. Co.*, 432 N.E.2d at 1391. Preventing fraud is not the only purpose of such an exclusion, however. *See, e.g.*, *Kunse*, 90 N.E. at 91 (enforcing a suicide clause and noting that insurers may choose "not to assume a risk of a certain mode of death, and presumably the premiums are calculated on the elimination of that risk").[1] Regardless of the purpose of

---

[1] Officer assets that Chase has waived any argument that the exclusion could serve a purpose other than fraud. Chase,

(continued...)

Chase's suicide limitation, forfeiture and liquidated damages are not appropriate concepts to apply to a suicide exclusion in an insurance contract. Officer cites cases dealing with lending arrangements, health services contracts, and land sale contracts—notably, he does not cite any cases dealing with insurance contracts.

Exclusions are generally enforceable in insurance contracts because "[i]nsurance companies are free to limit their liability in a manner not inconsistent with public policy as reflected by case or statutory law." *Allstate Ins. Co. v. Boles*, 481 N.E.2d 1096, 1098 (Ind. 1985). The Indiana Supreme Court has upheld (or, absent issues of fact, indicated that it would be likely to uphold) insurance exclusions where the insured injures a member of his own household, *id.* at 1101, exclusions for intentional acts, *Allstate Ins. Co. v. Herman*, 551 N.E.2d 844, 846 (Ind. 1990), and exclusions for business activities in a homeowner's policy, *Frankenmuth Mut. Ins. Co. v. Williams ex rel. Stevens*, 690 N.E.2d 675, 680 (Ind. 1997). The court has also approvingly discussed suicide exclusions on many occasions. *See, e.g., Sovereign Camp of Woodmen of the World v. Porch*, 110 N.E. 659 (Ind. 1915) (the burden is on the insurer to prove suicide); *Hazelett*, 4 N.E. at 587 (suicide clause not applica-

---

[1] (...continued)

however, maintained in its summary judgment brief, summary judgment oral argument, and appellate brief that insurance companies define the risks that they insure and determine the premium rates by the exposure to those risks. Chase has not waived any argument with respect to the purpose of the suicide exclusion.

ble where death was caused by accident). "If a plainly
expressed exception, exclusion or limitation in an insur-
ance policy is not contrary to public policy, it is entitled
to construction and enforcement *as expressed*." *Boles*, 481
N.E.2d at 1098 (emphasis added). Chase is not seeking
to escape its obligations under the policy; it tendered a
check to Officer for the amount it owed. The suicide
exclusion is not an unenforceable penalty and is subject
to enforcement as expressed.

## C. Substantial Performance

Officer also argues that the breach of the insurance
contract was immaterial and the doctrine of substantial
performance should prevent Chase from discharging its
obligation to pay. He asserts that the suicide provision
was 95% performed at the time of the breach and its
purpose was effectuated because there was no evidence of
fraud. Substantial performance applies "where perfor-
mance of a nonessential condition is lacking, so that the
benefits received by a party are far greater than the injury
done to him by the breach of the other party." *Gibson v.
Neu*, 867 N.E.2d 188, 195 (Ind. Ct. App. 2007) (internal
quotation omitted). Officer would like us to consider
several factors to determine whether the breach was
material enough to excuse Chase from paying the face
amount of the policy. *See, e.g.*, *Collins v. McKinney*, 871
N.E.2d 363, 375 (Ind. Ct. App. 2007) (applying Restatement
(Second) of Contracts § 241 to determine the materiality
of the breach); *Frazier v. Mellowitz*, 804 N.E.2d 796, 803
(Ind. Ct. App. 2004) (same).

The district court concluded that the doctrine of sub-stantial performance was inapplicable to a suicide exclu-sion. Officer complains that the district court relied upon a single irrelevant case, *Dove v. Rose Acre Farms, Inc.*, 434 N.E.2d 931 (Ind. Ct. App. 1982). The district court, how-ever, only cited that case for the definition of substantial performance; instead, the court based its reasoning upon Officer's inability to cite (and its own inability to find) any cases where the doctrine of substantial perfor-mance was applied in the way that Officer suggested. On appeal, Officer again primarily cites cases dealing with land sale contracts and services contracts, but this time he also cites one insurance case, which we will discuss.

In *Miller v. Dilts*, 463 N.E.2d 257, 260 (Ind. 1984), the Indiana Supreme Court considered the issue of whether an insurance company must show actual prejudice to avoid coverage under a policy where an insured failed to give the company prompt notice of a claim. The court recognized that the duty to notify is a "condition[] prece-dent to the insurance company's liability to its insured." *Id.* at 260-61. The court held that prejudice can be presumed by an unreasonable delay in notifying the company about an accident or lawsuit, but the insured can rebut that presumption by showing evidence that the insurance company was not actually prejudiced. *Id.* at 265-66. Officer seizes upon the court's discussion of how an insured could rebut the presumption, and he argues that it "fore-closes Chase's simplistic argument that a two-year provi-sion is a two-year provision" because the court did not say the same thing about notice: "Notice was either timely or it was not." This is illogical. The notice provision in

*Miller* did not contain a specific deadline; it required the insured "promptly notify" the insurer of the claim. *Id.* at 260. Timeliness under that provision is *measured* by prejudice—if the insurance company is prejudiced, the notice is not timely. Additionally, prompt notice serves an important purpose, in that it allows the insurance company to begin to investigate and defend a claim; using prejudice as the measure of timeliness serves that purpose. Here, the measure of time for the exclusion is the period assigned by the policy, two years. The important purpose served (whether the provision was included to prevent fraud or for any other reason) is to exclude from coverage a specified risk for a specified amount of time. Allowing Officer to recover would thwart the purpose of the exclusion. In any event, the doctrine of substantial performance is simply inapplicable here; an insured is not "performing" a life insurance contract by not committing suicide. We reiterate that "[i]f a plainly expressed exception, exclusion or limitation in an insurance policy is not contrary to public policy, it is entitled to construction and enforcement *as expressed*." *Boles*, 481 N.E.2d at 1098 (emphasis added). Officer is entitled only to the amount of premiums paid.

## D. Motion for Certification

Officer moved that we certify two questions to the Indiana Supreme Court pursuant to our Circuit Rule 52: whether the doctrines of illegal forfeiture and substantial performance apply to this insurance contract. "A case is appropriate for certification where it concerns a

matter of vital public concern, where the issue will likely recur in other cases, where resolution of the question to be certified is outcome determinative of the case, and where the state supreme court has yet to have an opportunity [to] illuminate a clear path on the issue." *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.*, 514 F.3d 651, 659 (7th Cir. 2008) (internal quotation omitted). The Indiana Supreme Court permits a federal court to certify a question when it appears that "a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent." Ind. R. App. P. 64(a). We believe that the Indiana Supreme Court has "illuminate[d] a clear path," *Plastics Eng'g Co.*, 514 F.3d at 659, for us to confidently resolve Officer's claim under Indiana law. As such, we decline to certify the questions. *Compare McWaters v. Parker*, 995 F.2d 1366, 1371 n.4 (7th Cir. 1993) (denying a motion to certify a question, noting that "[u]nderlying the foregoing analysis is our belief that the Indiana Supreme Court's position on mutual mistake in this type of case is discernable") *with Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 509-10 (7th Cir. 1998) (certifying a question to the Indiana Supreme Court on the Indiana Code's definition of Political Action Committee "due to the breadth of impact of the issue at bar and the important concerns of federalism apparent when a federal court is asked to interpret a state statute").

### III. Conclusion

The district court properly concluded that the suicide limitation was valid and enforceable. We AFFIRM the

district court's judgment and DENY Officer's motion for certification of questions to the Indiana Supreme Court.